Devon **MIKEL**, Appellant–Respondent

v.

**ELKHART COUNTY DEPARTMENT OF PUBLIC WELFARE,** Appellee–Petitioner.

No. 20A03–9303–CV–105.

Court of Appeals of Indiana, Third District.

Oct. 21, 1993.

Marie Waring Mengel, Elkhart Legal Aid Service, Inc., Elkhart, for appellant-respondent.

Barry A. Chambers, Elkhart County Dept. of Public Welfare, Elkhart, for appellee-petitioner.

GARRARD, Judge.

Devon Mikel was found to be in civil contempt for not following court orders of the Juvenile Division of the Elkhart Circuit Court. He now appeals.

FACTS AND PROCEDURAL HISTORY:

On November 20, 1990, a petition for Dissolution of Marriage was filed in the Elkhart Superior Court No. 1 by Jenny Mikel, wife of Devon Mikel (Mikel).

On March 29, 1991, the court found an emergency existed and Mikel's children were placed in protective custody as wards of the court.

On May 28, 1991, the case was venued to the Elkhart Circuit Court, Juvenile Division. On June 14, 1991, the court authorized the Department of Public Welfare (DPW) to file a Child In Need of Services (CHINS) petition, which DPW filed later. The CHINS petition alleged physical abuse by Mikel and neglect by the mother. On July 9, 1991, the initial hearing on the CHINS petition, Mikel and his wife were "admonished to not create any difficulties or problems for the children, as far as their relationship, to attempt to keep the children out of the dispute as to their marriage." (R. 13). DPW filed a petition for citation alleging violations of the July 9, 1991 order. A citation was issued, and a hearing was held November 4, 1991; Mikel was found to be in contempt of court. The court stated Mikel "from his testimony, also demonstrates that he does not have a good grasp on reality, and there also being a report from [a] therapist, that Mr. Mikel has a definite psychiatric condition." (R. 18). The court imposed a 90 day jail sentence, suspended on condition that Mikel submit himself to psychiatric assessment. Mikel did undergo such an assessment.

On December 3, 1991, at the hearing on the CHINS petition, Mikel agreed to wardship of the children and they were adjudicated CHINS. Mikel was given supervised visits with the children and ordered to be involved in individual and family counseling. Mikel was also ordered to follow the recommendations of his doctor, and to take his medication.

A review hearing was held on March 23, 1992. Mikel was ordered to continue to receive psychological testing and to finish parenting classes. Regular supervised visits between Mikel and his children were to take place. All family members were to continue with counseling. Mikel's financial disclosures were filed and he was ordered to pay $96.00 per week for the cost of services to his children.

DPW filed two petitions for citation alleging Mikel had violated numerous orders of the court, and a citation was issued May 28, 1992 with the hearing scheduled for June 9, 1992.

Mikel received service of the citation on June 2, 1992, but failed to appear at the June 9 hearing. Also on June 9, 1992, a DPW caseworker filed an application for Immediate Detention of Mentally Ill and Dangerous Person regarding Mikel. Mikel's whereabouts were unknown.

A body attachment was issued for Mikel, the court finding that Mikel had failed to appear for the June 9, 1992 contempt hearing. Mikel was taken to Elkhart County jail on November 6, 1992.

On November 18, 1992, the Juvenile Division held a hearing on the contempt citation. The Juvenile Court Referee signed an order finding Mikel in contempt of court for his failure to obey the prior orders entered and imposed a 180 day sentence to the county jail. The order gave Mikel the option of serving the sentence in a mental health facility. The order became a final order on November 24, 1992 when the Judge of the Elkhart Circuit Court signed it.

The praecipe was filed on December 22, 1992.

ISSUES:

Mikel presents three issues. Because we find the first two issues dispositive, we decline to address issue three.

    I.   Are the issues moot?

    II.  Does the Juvenile Court acquire authority over parents when a CHINS petition is filed or when the children are adjudicated as CHINS, or only when a parental participation petition is filed?

    III.  Did the Juvenile Court have the power to order Mikel (the parent of a CHINS) to receive in-patient psychiatric care?

DISCUSSION:

ISSUE I:

■ Mikel was released from the county jail prior to the decision in this case. Mikel argues that an actual controversy exists since the juvenile court continues to exercise jurisdiction and make specific orders with respect to him. Mikel argues further that he could be cited again to show cause for not following these orders.

■ A case is deemed moot when effective relief cannot be rendered to the parties before the court. *Matter of Lawrance* (1991), Ind., 579 N.E.2d 32, 37. If the concrete controversy at issue has been disposed of, the case warrants dismissal. *Id.* Mikel has been released from the county jail, having served his contempt sentence. Effective relief therefore cannot be afforded to Mikel.

Indiana law is well settled that a case may be decided on the merits even if a specific issue is moot, if the case presents questions of great public interest. *Id.* Public interest exception cases typically involve recurring issues. *Id.*

The juvenile court ordered Mikel to do and refrain from doing certain things after the filing of the CHINS petition. The point at which the juvenile court has jurisdiction over a parent is a question of great public interest. Due to the large number of cases the juvenile court handles and because Mikel may be subject to additional court orders, we think this issue is likely to recur.

ISSUE II:

■ Mikel contends that since a petition for parental participation was not filed, the juvenile court did not have proper authority to compel him to act or refrain from acting. He argues that since the court failed to invoke its authority over him, the orders

were invalid and do not constitute a proper basis for contempt.

I.C. 31–6–4–17 entitled "Parental participation petition; hearing" provides in relevant part:

(a) The prosecutor, the attorney for the county department, a probation officer, a caseworker, or the guardian ad litem or court appointed special advocate may sign and file a petition for the juvenile court to require the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for the child or to require a person to refrain from direct or indirect contact with the child. The petition shall be verified.

(b) If the petition seeks participation of a parent, guardian, or custodian, the petition must be entitled "In the Matter of the Participation of _____ the Parent, Guardian, or Custodian of _____", and must allege that:

(1) the respondent is the child's parent, guardian, or custodian;

(2) the child has been adjudicated a delinquent child or a child in need of services; and

(3) the parent, guardian, or custodian should:

(A) obtain assistance in fulfilling obligations as a parent, guardian, or custodian;

(B) provide specified care, treatment, or supervision for the child;

(C) work with any person providing care, treatment, or rehabilitation for the child; or

(D) refrain from direct or indirect contact with the child.

.  .  .  .  .

(d) The court may hold a hearing on the petition concurrently with any dispositional hearing or with any hearing to modify a dispositional decree. If the order concerns participation of a parent, the juvenile court shall advise the parent that failure to participate as required by an order issued under section 15.8 of this chapter can lead to the termination of the parent-child relationship according to IC 31–6–5. If the court finds that the allegations under (b) or (c) are true, it shall enter a decree.

I.C. 31–6–4–17.

■ Elkhart argues this statute is not jurisdictional or a prerequisite for ordering parental participation. We disagree.

The juvenile court's order stated in part "this proceeding is under the Indiana Mental Health Code, Child In Need of Services, including I.C. 31–6–4–15.3(h)(2) and 31–6–4–17, [and] such statutes allow the Juvenile Court to provide and order specific types of services that will assist the parents in fulfilling their obligations as parents." (R. 41). I.C. 31–6–4–17 is a procedural statute, and the procedures it establishes were not complied with in this case.

Elkhart notes that I.C. 31–6–4–17 does not state that the opportunity to participate will be provided *only* if DPW files a participation petition. We examine a statute in its entirety, interpreting words based upon their common and ordinary meaning, not overemphasizing selective reading of individual words. *Spaulding v. Int'l Bakers Serv.* (1990), Ind., 550 N.E.2d 307, 309 (citations omitted). The statute states a caseworker "may sign and file a petition." We do not think that the legislature enacted the statute intending it to be an "optional" procedure to be performed before a court orders parents to do or refrain from certain actions. Rather the court "may" order parents to do or refrain from actions; if the court wishes to do so, the procedure provided in I.C. 31–6–4–17 must be followed. For this reason we do not think that the lack of the word "only" here is dispositive.

■ Elkhart further contends that a participation petition is only one means to mandate parental participation. We believe that I.C. 31–6–4–17 is the only means a court may *mandate* parental involvement subject to contempt of court. Undoubtedly it was envisioned by the legislature that a large proportion of parents would eagerly be involved with their children.

Elkhart notes the juvenile court has exclusive original jurisdiction in:

(2) Proceedings in which a child, including a child of divorced parents, is alleged to be a child in need of services (IC 31–6–4).

.    .    .    .    .

(5) Proceedings governing the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for a child (IC 31–6–4–17).

I.C. 31–6–2–1.1

Subsection (5) of the statute is cross-referenced to I.C. 31–6–4–17, the parental participation petition section. In our view, this would lends weight to the argument that the procedural requirements of 31–6–4–17 need to be complied with prior to a court ordering parental participation.

Elkhart correctly states that one of the purposes of the juvenile code is "to strengthen family life by assisting parents to fulfill their family obligations." I.C. 31–6–1–1(5). Comments by J. Richard Kiefer in West's Annotated Code to the section suggest that:

> Subsection ... (5) of the new code's purpose section continue[s] the state's policy of resolving problems within the family and within the juvenile court system whenever possible. Th[is] subsection ... must be read in conjunction with I.C. 31–6–4–15(d) and I.C. 31–6–4–16(d) which require, when consistent with public safety and the welfare of the child and the community, the probation officer to propose in the predisposition report and the judge to impose at disposition a program of 'care, treatment, or rehabilitation that
>
> (1) least interferes with family autonomy;
>
> (2) is least disruptive of family life;

(3) imposes the least restraint on the freedom of the child and his parent, guardian, or custodian; and

(4) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.'

I.C.Ann. 31–6–1–1 (West 1979).

When I.C. 31–6–1–1(5) is read along with the other goals/purposes of the juvenile code, it becomes clear that subsection (5) is not so all important that it is meant to override procedural provisions. "Providing a reasonable opportunity" can be most reasonably interpreted to mean that the court should consider participation by parents, in favor of shutting parents off from their children.

We conclude that the language of I.C. 31–6–4–17 mandates certain procedures be followed before the juvenile court can affirmatively order the participation of a parent in a dispositional decree.[1] Prior to that time the juvenile court does not have jurisdictional authority over a parent and may not order parental action, as occurred in this case. We do not believe that the juvenile code grants jurisdiction over parents so that they may be found in contempt of court, simply by the filing of a CHINS petition, or by a court's finding that children are CHINS.

The decision of the juvenile court is reversed.

HOFFMAN and RUCKER, JJ., concur.

---

1. We note that this decision is consistent with commentators:

> This section [I.C. 31–6–4–17] was intended to create the exclusive procedure available to the juvenile court for acquiring jurisdiction over parents whose child is the subject of a delinquency or child in need of services proceeding. The filing of the petition required by this section is jurisdictional; that is, if the petition is not filed, the court has no statutory power to order the parents to "participate" in the disposition of the court. Of course, the filing of the petition is not necessary for the court ... to exercise its contempt of court power under I.C. 31–6–7–15.

I.C.Ann. 31–6–4–17 (West 1979).