v.

**STATE of Indiana, Appellee–Petitioner.**

No. 49A02–0105–JV–262.

Court of Appeals of Indiana.

Oct. 3, 2001.

Katherine A. Cornelius, Marion County Public Defenders Office, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

A.E.B. challenges her adjudication of delinquency for Criminal Trespass as a Class D felony.[1] A.E.B. contends that the juvenile court erred when it allowed the State to amend the charging information on the day of her hearing and the State failed to present sufficient evidence to establish that she committed criminal trespass. A.E.B. also contends that the juvenile court erred when it imposed a parental participation order without a petition being filed and when it imposed fees without conducting an indigency hearing.

We find that by failing to ask for a continuance after her objection was overruled, A.E.B. waived the issue concerning the State's amendment of the pleading. We also find that there is sufficient evidence to show that she committed criminal trespass. However, we find that the juvenile court did not have proper jurisdiction to issue a parental participation order without a petition first being filed. We also find that the court erred when it ordered A.E.B. to pay costs. Therefore, we affirm in part, reverse in part, and remand with instructions to hold an indigency hearing.

### Facts and Procedural History

The facts most favorable to the judgment show that on October 23, 2000, A.E.B. received a suspension for five days

from Indianapolis Public School (IPS) # 110, Julian Coleman Middle School, with a recommendation for expulsion. At the time A.E.B. received this October suspension, the school did not allow her to immediately leave the school premises. A.E.B. was 14 years old and lived two miles from Coleman Middle School. Because there is no mid-day bus service from the Coleman Middle School, the school does not allow a suspended student to leave the building until the end of the school day unless a parent is contacted to pick up the student. The school sent a notice regarding the suspension to her father, I.V. Brown.

While A.E.B.'s suspension only ran until November 1, Assistant Principal Claritha Tookes informed A.E.B. to stay out of school until she heard from the IPS's downtown office regarding her expulsion. When a student is recommended for expulsion, the proper paperwork is forwarded to IPS's downtown office. The downtown office then appoints a hearing officer within five days and the student is notified of the hearing time. Despite Tookes's instruction to stay out of the school until receiving notice from the downtown office, A.E.B. returned to Coleman Middle School after the conclusion of her five-day October suspension.

On November 17, 2000, A.E.B. was again suspended pending expulsion, and the school sent another notice to Brown. According to the November Notice of Suspension from School Attendance Pending Further Proceedings for Expulsion, A.E.B. "was suspended from attendance at Coleman Middle School for 5 school days beginning on Tuesday, November 17, 2000, through and including Monday, November 27. [P]ending expulsion." Exhibits P.1. On

---

1. Ind.Code § 35–43–2–2.

November 28, Brown sent A.E.B. back to school.

Once at school, A.E.B. went to several classrooms and verbally insulted the teachers. Police Officer Averitte Sheroan, who was assigned to Coleman Middle School, confronted A.E.B., told her that she was not supposed to be in the school building, and escorted her to the school's office to determine if she was actually on suspension. A.E.B. became loud and refused to be quiet after Officer Sheroan asked her to stop. After conferring with the principal, Officer Sheroan told A.E.B. to leave the school building or she would be arrested for trespassing and disorderly conduct. A.E.B. refused to leave unless she was able to talk to her nephew who also attended the school. Officer Sheroan then arrested her and placed her in handcuffs. It was only after she was arrested that A.E.B. asked to call her father.

On January 3, 2001, the State filed a petition alleging that A.E.B. was a delinquent child for committing the acts of Criminal Trespass as a Class D felony if committed by an adult and Disorderly Conduct as a Class B misdemeanor if committed by an adult.[2] The court held the fact-finding hearing on March 16, 2001. On the day of the hearing, the State amended the petition over A.E.B.'s objection to include Criminal Trespass that results from "refusing to leave after being told to do so." Tr. P.1–2. The court found A.E.B. to be a delinquent child for having committed both offenses. On April 16, 2001, the court issued a suspended commitment to the Department of Corrections, ordered A.E.B. to complete 40 hours of community service, ordered her to pay probation fees and a $50 public defender fee, and waived docket fees if A.E.B. received C's or above on her next report card. The court also issued a parental participation order for Brown. This appeal then ensued.

## Discussion and Decision

On appeal, A.E.B. raises four arguments. First, she argues that the juvenile court erred by allowing the State to amend the charging information on the day of her hearing. Next, she claims that State failed to present sufficient evidence to establish that she committed criminal trespass. A.E.B. also asserts that the juvenile court erred when it imposed a parental participation order without a petition being filed. Finally, A.E.B. argues that the court erred when it ordered her to pay costs without holding an indigency hearing. We address each argument in turn.

### I. Amending the Charging Information on the Day of Trial

■ First, A.E.B. claims that the court erred by allowing the State to amend the delinquency petition on the day of hearing. The original language on the petition alleged that A.E.B. committed Criminal Trespass as a Class D felony when she "not having a contractual interest in the property did knowingly or intentionally enter the real property of IPS School # 110 ... after having been denied entry by school administrators." Appellant's App. P.10. On the day of A.E.B.'s hearing, the State amended, over A.E.B.'s objection, the petition to include criminal trespass that results from "refusing to leave after being told to do so." Appellant's App. P.10. A.E.B. alleges that this was a substantive amendment that changed the defenses that may have been available to her.

■ We find that A.E.B. has waived this issue for appeal. While A.E.B. objected to the amendment at the time the State proposed it, she did not ask for a continuance after the amendment was granted.

2. Ind.Code § 35–45–1–3.

Once a defendant's objection has been overruled, she should request a continuance. *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind.1996). Failure to request a continuance after objecting to an amendment to the charges, results in waiver of that issue for appeal. *Id.* A.E.B. had the opportunity to request a continuance after she objected to the amendment and chose not to pursue that course. Therefore, A.E.B. has waived this issue for appeal.

## II. Sufficiency of the Evidence

 A.E.B. challenges the sufficiency of the evidence supporting her adjudication of delinquency for an act which, had it been committed by an adult, would have constituted Criminal Trespass as a Class D felony. Specifically, A.E.B. alleges there was insufficient evidence to prove that she did not have a contractual interest in the property because she was a student at the school. A.E.B. also alleges that she lacked the requisite criminal intent because she was unable to leave the school after she was asked to leave the school property. When the State seeks to have a juvenile adjudicated to be delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. *Al–Saud v. State*, 658 N.E.2d 907, 908 (Ind.1995). Upon review, we apply the same sufficiency standard used in criminal cases. *Id.* at 909. When reviewing the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *D.R. v. State*, 729 N.E.2d 597, 599 (Ind.Ct.App.2000). Instead we look only to the evidence of probative value and the reasonable inferences that support the determination. *Id.*

A person commits Criminal Trespass when (1) not having a contractual interest in the property, (2) she knowingly and intentionally refuses to leave the real property of another person, (3) after having been asked to leave by the other person or that person's agent. Ind.Code § 35–43–2–2(a)(2); *Woods v. State*, 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998). The offense is a Class D felony if it is committed on school property. I.C. § 35–43–2–2(a).

A.E.B. insists that she could not have committed criminal trespass because as a student at Coleman Middle School she had a contractual interest in the property. We have held that a "contractual interest" as it is used in the criminal trespass statute, refers to the right to be present on another's property, arising out of an agreement between at least two parties that creates an obligation to do or not to do a particular thing. *See Woods*, 703 N.E.2d at 1117. A.E.B. maintains that the education clause found in Article 8, Section 1 of the Indiana Constitution,[3] coupled with Indiana's compulsory school attendance law[4] provides her with a contractual interest in the school property. Even assuming that A.E.B.'s claim is correct, we find that A.E.B. violated whatever contract existed when she interfered with the educational activities at Coleman Middle School to the point where she committed the crime of disorderly conduct.

According to Officer Sheroan's testimony, before A.E.B. was asked to leave the school building, she was going from classroom to classroom, disrupting the classes, cursing the teachers, and making a loud noise after she was told to stop. "The State, no less than a private owner of

---

**3.** Article 8, Section 1 of the Indiana Constitution states in pertinent part that the General Assembly will "provide, by law, for a general and uniform system of Common School,

wherein tuition shall be without charge, and equally open to all."

**4.** Ind.Code § 20–8.1–3–17.

property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Grody v. State*, 257 Ind. 651, 657, 278 N.E.2d 280, 284 (1972) (quoting *Adderley v. Florida*, 385 U.S. 39, 47, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966)). The administration of Coleman Middle School had the power to request that A.E.B. leave the school property after she began to interfere with the educational activities to such an extent as to be guilty of the crime of disorderly conduct. A.E.B. did not have a contractual interest to remain on school property in order to disrupt the educational environment and to break the law. By committing the crime of disorderly conduct on school property, A.E.B. abandoned whatever contractual interest she had in the school property. Thus, we find that there was sufficient evidence to show that A.E.B. did not have a contractual interest in the school property when she was asked to leave the premises.

 A.E.B. also alleges that she lacked the requisite intent to commit criminal trespass. A.E.B. contends that she refused to leave the school property because she was 14 years old, lived two miles from school, and was unable to leave the school unless she waited until the bus took her home at the end of the day or her father came to the school to get her. A.E.B.'s claim is that she believed she had a right to be on the property because she thought that she was physically unable to leave the school premises after she was told to do so. The belief that one has a right to be on the property of another will defeat the mens rea requirement of the criminal trespass statute if it has a fair and reasonable foundation. *Olsen v. State*, 663 N.E.2d 1194, 1196 (Ind.Ct.App.1996). It is for the trier of fact to determine whether the defendant believed that she had a right to be on the property of another and whether that belief had a fair and reasonable foundation. *Myers v. State*, 190 Ind. 269, 269, 130 N.E. 116, 117 (1921). A.E.B.'s argument is essentially a request for us to reweigh the evidence to conclude that her belief that she could stay on the school property had a fair and reasonable foundation, this we cannot do.

The State presented sufficient evidence to show that A.E.B.'s refusal to leave the property was not based on a belief that she was incapable of leaving the school. According to Officer Sheroan's testimony, after he told A.E.B. repeatedly that she must leave the school property, A.E.B. responded that she would not leave until she talked to her younger nephew who was a fellow student at the school. Officer Sheroan later testified that A.E.B. did not even ask to call her father until after she was arrested for disorderly conduct and refusing to leave school property. There were sufficient facts presented from which the court could find that A.E.B's refusal to leave was based on her intent to talk to her nephew, not out of a fear or inability to travel back to her home. A.E.B.'s desire to talk with her nephew did not provide a fair and reasonable foundation for her belief that she had a right to be on school property after she was asked repeatedly to leave. Therefore, we conclude that there was sufficient evidence supporting A.E.B.'s adjudication of delinquency for an act that would have constituted criminal trespass had it been committed by an adult.

### III. Parental Participation Order

 Next, A.E.B. asserts that the trial court erred when it imposed a parental participation order against I.V. Brown as part of the disposition of A.E.B.'s delinquency case without a petition for such an order first being filed. Before we address the merits of A.E.B.'s claim, we must determine whether A.E.B. has standing to

attack the parental participation order issued against her father.

■ In addressing whether a child has standing to challenge a parental participation order issued against her father, we look to the nature of the order. Through a parental participation order issued as part of a delinquency disposition, the court may order a parent, custodian or guardian to:

(1) obtain assistance in fulfilling the obligations as a parent, guardian, or custodian; (2) provide specified care, treatment, or supervision for the child; (3) work with a person providing care, treatment, or rehabilitation for the child; and (4) participate in a program operated by or through the department of correction.

Ind.Code § 31–37–19–24. Therefore, a parental participation order establishes certain parental duties and directs parental choice and control in the rearing of the child.

By issuing a parental participation order, a juvenile court impacts the rights of the parent in establishing the nature of the parent-child relationship. We have previously stated that when:

focusing upon the tenor of the provisions relating to juveniles, the rights accorded parents and child are viewed as coextensive. Parents and child are treated as one. With the exception of petitions alleging the children to be in need of services often including allegations of some neglect by the parents, the child's and parents' interests are the same.

L.B. v. State, 675 N.E.2d 1104, 1107 (Ind. Ct.App.1996) (allowing a child to assert his parent's right to be present at his hearing). Because a parental participation order can direct the parent-child relationship and affect their mutual interests, it follows that a child can challenge a parental participation order. *See id.* at 1108–09. Thus, we find that A.E.B. has standing to contest the parental participation order issued against her father.

■ Turning now to the merits of A.E.B.'s claim, A.E.B. asserts that the juvenile court did not have proper authority to issue a parent participation order as part of the disposition of A.E.B.'s delinquency case. Specifically, A.E.B. contends, and the State concurs, that a petition for parental participation must be filed before a juvenile court can issue the participation order as part of a delinquency disposition. We agree.

In *Mikel v. Elkhart County Department of Public Welfare*, 622 N.E.2d 225 (Ind.Ct. App.1993), we concluded that "the language of I.C. 31–6–4–17 mandates certain procedures be followed before the juvenile court can affirmatively order the participation of a parent in a dispositional decree." 622 N.E.2d at 229. The procedures contained in Indiana Code § 31–6–4–17 for parental participation orders as part of a delinquency disposition were later separated from the procedures for parental participation orders issued as part of child in need of services (CHINS) cases and recodified at Indiana Code ch. 31–37–15.[5] However, the substance of former Indiana Code § 31–6–4–17 was not changed in the recodification, and our interpretation of the procedures to be followed before a juvenile court can issue a

---

5. The procedures for parental participation orders issued as part of child in need of services (CHINS) cases originally contained in former Indiana Code § 31–6–4–17 were recodified at Indiana Code ch. 31–34–6. *See* P.L. 1–1997 §§ 17, 157. The necessary procedures for a parental participation order issued as part of a CHINS case are identical to those found in the process for issuing a parental participation order as part of a delinquency disposition.

parental participation order as part of a delinquency disposition also remains the same.[6]

Indiana Code § 31–37–15–1 provides that a "petition for the juvenile court to require the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for the child" can be filed by the: (1) prosecuting attorney, (2) the attorney for the county office of family and children, (3) a probation officer, (4) a caseworker, (5) the department of correction, (6) and the guardian ad litem or court appointed special advocate. Ind.Code § 31–37–15–1. This petition must be verified. Ind.Code § 31–37–15–2.

Indiana Code § 31–37–15–3 also dictates the form and substance of the petition:

A petition seeking participation of a parent, guardian, or custodian must be entitled "In the Matter of the Participation of the _____ Parent, Guardian, or Custodian of _____". The petition must allege the following:

(1) That the respondent is the child's parent, guardian, or custodian.

(2) That the child has been adjudicated a delinquent child.

(3) That the parent, guardian, or custodian should:

(A) obtain assistance in fulfilling obligations as a parent, guardian, or custodian;

(B) provide specified care, treatment, or supervision for the child;

(C) work with a person providing care, treatment, or rehabilitation for the child; or

(D) refrain from direct or indirect contact with the child.

Ind.Code § 31–37–15–3.

After the verified petition for parental participation is filed, the juvenile court conducts a hearing on the petition. Indiana Code § 31–37–15–4 provides:

(a) The court may hold a hearing on a petition concurrently with any dispositional hearing or with any hearing to modify a dispositional decree.

(b) If the order concerns participation of a parent, the juvenile court shall advise the parent that failure to participate as required by an order issued under IC 31–37–19–24 (or IC 31–6–4–15.8 before its repeal) can lead to the termination of the parent-child relationship under IC 31–35.

(c) If the court finds that the allegations under section 3 of this chapter are true, the court shall enter a decree.

Ind.Code § 31–37–15–4.

■ In *Mikel*, we ruled that all of these procedures must be followed before a juvenile court "may mandate parental involvement subject to contempt of court." 622 N.E.2d at 228. Without the filing of a proper verified parental participation petition, a juvenile court does not have jurisdictional authority over a parent and may not order parental action. *Id.* at 229. The recodification of this process does not change our previous decision. Therefore, we conclude that all of the procedures contained in Indiana Code ch. 31–37–15 must be followed before a juvenile court can issue a parental participation order as part of a delinquency disposition. Thus, we reverse the parental participation order.

---

**6.** While Indiana Code ch. 31–37–15 divided former Indiana Code § 31–6–4–17 into four separate sections, there were no substantive changes that would affect our discussion concerning the process for issuing a parental participation order issued as part of a delinquency disposition. *See* P.L. 1–1997 §§ 20, 157.

### IV. Indigency Hearing

■ A.E.B. argues and the State concedes that the trial court erred when it ordered her to pay probation fees and a $50 public defender fee without conducting an indigency hearing. When a court imposes costs, it shall conduct a hearing to determine if the defendant is indigent. Ind.Code § 33–19–2–3; *Vestal v. State,* 745 N.E.2d 249, 253 (Ind.Ct.App.2001). The trial court has an affirmative duty to conduct an indigency hearing when imposing costs on a criminal defendant. *Everroad v. State,* 730 N.E.2d 222, 227 (Ind.Ct.App. 2000). While the trial court's appointment of defense and appellate counsel for A.E.B. implied a finding of indigency, the appointment of counsel was not conclusive as to her inability to pay costs. *Vestal,* 745 N.E.2d at 253. Therefore, because the court ordered A.E.B. to pay costs without an indigency hearing, the proper remedy is to remand with instructions to hold such a hearing. *Id.* Thus, we remand for a hearing to address whether A.E.B. has the ability to pay the costs of her public defender and her probation.

Affirmed in part and reversed in part and remanded with instructions to hold an indigency hearing.

DARDEN and MATHIAS, JJ., concur.