## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2018, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Christopher Sturgeon
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B.F.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 21, 2018

Court of Appeals Case No.
18A-JV-460

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael, Judge

The Honorable Maria Granger, Special Judge

Trial Court Cause No.
10C04-1611-JD-300

**Altice, Judge.**

## Case Summary

On three consecutive days at school, B.F. grabbed E.S. and forced him into a bathroom where E.S. was held and struck with a belt or otherwise hurt. Several other boys were also involved in one or more of these incidents, but B.F. was the ringleader each time. Following a delinquency fact-finding hearing, B.F. was adjudicated a delinquent for committing multiple acts that would constitute crimes if committed by an adult. Specifically, the trial court entered true findings of three counts of battery, three counts of confinement, and one count of hazing. On appeal, B.F. challenges the sufficiency of the evidence supporting his delinquency adjudication.

We affirm in part, reverse in part, and remand.

## Facts & Procedural History

B.F. and E.S. attended a small private school in southern Indiana, and both were members of the school's soccer team. B.F. was a senior and E.S was a freshman at all relevant times.

During a passing period on Wednesday, October 19, 2016, E.S. was walking down the stairs to his locker when B.F. grabbed him by the shoulders, held him tight, and forced him into the bathroom at the bottom of the stairs. While doing this, B.F. told another student, T.B., to come to the bathroom to "whip" E.S. *Transcript Vol. Two* at 81. T.B. followed and took off his own cloth belt. T.B. then proceeded to "whip[] E.S. in the butt a couple times" while B.F. held

him. *Id.* When E.S. struggled to get away, B.F. picked E.S. up by the legs and held him upside down. E.S. squirmed again and fell to the tile floor, landing on his neck and shoulders. B.F. and T.B. then left E.S. in the bathroom. E.S. testified that he endured substantial pain as a result of landing on the floor and that it hurt when B.F. held him by the shoulders. At some point during the encounter, E.S. heard references to "Freshman Wednesday". *Id.* at 143.

[5] The next day, B.F. confronted E.S. once again in the stairwell. B.F. and one or two other boys picked E.S. up by his arms and legs and carried him into the bathroom. On the way, E.S. grabbed the stairwell and a doorframe, but his hands were pried off each time. Inside the bathroom, he was dropped to the floor. M.D., a boy much larger than E.S., placed hard pressure on E.S.'s chest, holding him to the ground for up to ten seconds. This caused E.S. "a great deal of pain." *Id.* at 140. E.S. tried to squirm away and kept saying, "I need to go to third period". *Id.* at 141. M.D. eventually got off of E.S., and the boys left.

[6] Again, the next day, a Friday, B.F. approached E.S. on the same stairway and carried him into the bathroom with the help of others. Several other boys were in the bathroom, and B.F. called T.B. in there too. T.B. was not wearing a belt this time, so he obtained one from an observer. This time it was a leather belt. B.F. restrained E.S., while T.B. struck him several times with the belt. This hurt E.S. "a great deal" and left him with a red mark on his leg. *Id.* at 144.

[7] E.S. initially said nothing to his parents or school staff because he was embarrassed and scared. On Saturday, however, he told his mother about what

had happened at school the three previous days.  Friday had been the most-serious incident, and E.S. was afraid the attacks would get worse.  His mother immediately contacted the dean of the school.  All of the boys who engaged in the improper behavior, including B.F., admitted their involvement and were suspended from school for five days.

[8] On November 23, 2016, the State alleged that B.F. was delinquent for having committed the following acts that would constitute crimes if committed by an adult:  three counts of Level 6 felony battery, three counts of Level 6 felony criminal confinement, one count of Level 6 felony stalking, and one count of Class B misdemeanor hazing.[1]  An evidentiary hearing was held on August 25 and December 1, 2017.  At the conclusion of the evidence, the State sought and obtained a dismissal of the stalking allegation.  The juvenile court then entered a true finding with respect to the remaining allegations.  At the dispositional hearing on January 8, 2018, the juvenile court ordered that B.F. perform twenty-five hours of community service, have no contact with E.S., write an apology to E.S. to be filed with the court, and write an essay regarding what B.F. had learned from the experience.  B.F. now appeals, challenging the sufficiency of the evidence.

## Discussion & Decision

---

[1] Delinquency proceedings were also brought against the other boys involved, each later admitting the allegations.

[9]     When the State seeks to have a juvenile adjudicated a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. *A.E.B. v. State*, 756 N.E.2d 536, 540 (Ind. Ct. App. 2001). On review, we apply the same sufficiency standard as that used in criminal cases. *Id*. We will not reweigh the evidence or judge the credibility of witnesses. *Id*. Instead, we will look only to the evidence of probative value and the reasonable inferences that support the court's determination. *Id*. We will affirm the adjudication unless no reasonable factfinder could find the elements of the offense proven beyond a reasonable doubt. *R.H. v. State*, 916 N.E.2d 260, 267 (Ind. Ct. App. 2009), *trans. denied*.

[10]    We first address the hazing true finding. B.F. contends that the evidence failed to establish any of the necessary elements beyond a reasonable doubt. Hazing is defined as knowingly or intentionally forcing or requiring another person, with or without that person's consent and as a condition of association with a group or organization, to perform an act that creates a substantial risk of bodily injury. Ind. Code § 35-42-2-2.5. We agree with B.F. that the evidence was far too thin regarding the hazing allegation. Most notably, there was no substantial evidence that E.S. was forced or required to endure the abuse in the bathroom as a condition of association with the soccer team. Accordingly, we reverse the true finding for hazing and remand to the juvenile court to vacate that true finding.

[11]    Next, B.F. argues that the State failed to establish that he knowingly or intentionally committed the acts for which he was found delinquent. B.F.

asserts that all of the boys involved were members of the soccer team, where horseplay and roughhousing were common practice. Further, B.F. notes that E.S. laughed at times during the incidents, did not cry, and "never told B.F. or the others that he did not like the activities, that they bothered him, that they hurt him, or to stop." *Appellant's Brief* at 10. B.F. claims he had "no evil intent towards E.S." *Id.*

[12] Each of the offenses required proof that B.F. acted knowingly or intentionally. *See* I.C. § 35-42-2-1(c)(1) (battery is committed when a person "knowingly or intentionally…touches another person in a rude, insolent, or angry manner"); I.C. § 35-42-3-3(a) ("A person who knowingly or intentionally confines another person without the person's consent commits criminal confinement."). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). He "engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Intent is a mental function that can be proved by circumstantial evidence and inferred from the defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points. *Phipps v. State*, 90 N.E.3d 1190, 1195-96 (Ind. 2018).

[13] The evidence establishes that on three separate occasions, B.F. grabbed or picked up E.S. in the hallway, sometimes with the help of others, and forced E.S. into the bathroom. On two occasions in the bathroom (Wednesday and Friday), B.F. held E.S. while another boy whipped E.S. with a belt and caused

him substantial pain.[2] On Thursday, after being carried into the bathroom, E.S. was dropped to the floor and then a much larger boy applied his body weight to E.S., placing hard pressure on E.S.'s chest and causing pain. In each instance, E.S. struggled unsuccessfully to get free, and on one occasion, his fingers had to be pried off the doorway and stairwell.

[14] This evidence is more than sufficient to establish that B.F. acted knowingly or intentionally when he battered and confined E.S. Further, we reject B.F.'s suggestion that he enjoyed some privilege to repeatedly impose himself on E.S. in this manner – in the name of horseplay – without legal consequence due to E.S.'s failure to make clearer his lack of consent.[3]

[15] We affirm the battery and confinement true findings and the resulting delinquency adjudication. On remand, the juvenile court shall vacate the hazing true finding.

[16] Judgment affirmed in part, reversed in part, and remanded.

Najam, J. and Pyle, J, concur.

---

[2] On Wednesday, B.F. also held E.S. upside down and eventually dropped him to the ground as E.S. squirmed to get free.

[3] Lack of consent is not even a defense to a charge of battery. *See Jaske v. State*, 539 N.E.2d 14, 18 (Ind. 1989); *Helton v. State*, 624 N.E.2d 499, 506 (Ind. Ct. App. 1993), *trans. denied*.