## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 08 2020, 11:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

K.B.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

April 8, 2020

Court of Appeals Case No.
19A-JV-2135

Appeal from the Knox Superior
Court, Juvenile Division

The Honorable Gara U. Lee,
Judge

Trial Court Cause No.
42D01-1902-JD-11

**Pyle, Judge.**

# Statement of the Case

K.B. ("K.B.")—following his admission to the allegation that he had committed an act that would constitute Class B misdemeanor criminal mischief if committed by an adult and his subsequent unsuccessful placement in a residential program—appeals the juvenile court's modified disposition order awarding wardship to the Indiana Department of Correction with placement at a juvenile facility. He also argues that the juvenile court erred by ordering payment of costs and fees without inquiring into the ability to pay. Concluding that the juvenile court did not abuse its discretion by modifying the dispositional order and that the juvenile court improperly imposed costs and fees without inquiring into an ability to pay, we affirm the juvenile court's modified disposition order, reverse the juvenile court's imposition of costs and fees, and remand for further proceedings.

We affirm in part, reverse in part, and remand.

# Issues

1. Whether the juvenile court abused its discretion by modifying the dispositional order to award wardship of K.B. to the Department of Correction.

2. Whether the juvenile court erred by ordering payment of costs and fees without inquiring into the ability to pay.

# Facts

[3] In February 2019, then fifteen-year-old K.B. lived with his stepmother, Sara Letts ("Stepmother"),[1] while his father was incarcerated. K.B.'s mother did not have regular contact with K.B. Apparently another relative had had a guardianship over K.B. since 2014, but that guardian did not have contact with K.B.

[4] On February 24, 2019, K.B. damaged a door frame at Stepmother's house. Thereafter, the State filed a petition alleging that K.B. was a delinquent child for committing an act that would constitute Class B misdemeanor criminal mischief if committed by an adult. K.B.'s juvenile history included an adjudication in September 2018 for battery resulting in moderate bodily injury and referrals for disorderly conduct and habitual disobedience.

[5] On March 14, 2019, the juvenile court held a combination admission/disposition hearing, during which K.B. admitted to the delinquency allegation. Stepmother was present at the hearing.[2] The juvenile court determined that K.B. was a delinquent child and then moved to determining the disposition. The juvenile court ordered a "90-day suspended sentence to secure detention, suspended to one year of formal probation[.]" (Tr. Vol. 2 at 10). As

---

[1] The record on appeal refers to Stepmother as Sara Letts, Sarah Letts, Sara Lett, or Sara Baughn.

[2] The record on appeal indicates that K.B.'s "sister" was present at the hearing. (App. Vol. 2 at 8, 53). However, the record further indicates that this "sister" who was present was Sara Letts, who is K.B.'s stepmother.

a condition of probation, the juvenile court ordered K.B. to complete a residential treatment program at White's Residential and Family Services ("White's"). During that hearing, the juvenile court advised K.B. as follows:

> [W]hen you're at White's, how long you are there is going to be dependent on you and your progress in that program[.] . . . So the sooner you get on board and take things seriously and take things to heart, and make some real change, the sooner you're going to be able to come home.

(Tr. Vol. 2 at 11). Additionally, the juvenile court imposed the "typical fines, costs, and fees[,]" which included a court cost of $185, a probation administration fee of $100, a public defender fee of $50, initial probation fee of $25, and a monthly user fee of $15. Upon the imposition of these costs and fees, K.B.'s counsel, the probation officer, and the juvenile court had the following discussion:

> [K.B.'s Counsel]: Just one administrative question, Your Honor. With regard to the fees, this is the situation where we have the guardianship in place for [K.B.] with a guardian that doesn't have any contact with [K.B.], Dad's incarcerated, and Mom's not involved on a regular basis. Who would normally be responsible for the payment of those fees to your office?
>
> [Probation Officer]: It would be [K.B.].
>
> [K.B.'s Counsel]: And he's 15, and going to placement, so I assume that will be something we will work out. Okay.
>
> THE COURT: Yup.
>
> [Probation Officer]: And that the monthly fee part?

THE COURT: While he's in placement - -

[Probation Officer]: Is waived?

THE COURT: - - won't accrue.

[K.B.'s Counsel]: Okay. Okay.

(Tr. Vol. 2 at 11-12).

[6] On June 3, 2019, the juvenile court held a review hearing. K.B.'s probation officer submitted a report prior to the hearing, and K.B.'s case manager at White's, Miranda Sipe ("Case Manager Sipe"), testified during the hearing. Case Manager Sipe informed the juvenile court that K.B. had initially done well when he had arrived at White's and that he was doing well academically. However, at the end of April and beginning of May, K.B. had been having behavioral issues, including anger issues, trying to manipulate staff, and problems with accepting consequences. The case manager also explained that K.B. was participating in, but had not yet completed, various treatment programs and that he was working on some family therapy with Stepmother. Before setting another review hearing for October, the juvenile court emphasized the importance of K.B.'s treatment participation at White's:

> So [K.B.], you understand that, you know, how long you're in treatment depends on you and your progress there. . . . [W]e want to make sure that you benefit from this program, and that when you're released, you're in a position that you won't be coming back here to see me again. We want you to be successful, sounds like you're doing great in school, I'm going to encourage you to keep up that, but really, you know, focus on your treatment and that type of thing because everybody wants

you to be successful and we're trying to get you in the best position for that.

(Tr. Vol. 2 at 18).

[7] K.B., however, did not heed the juvenile court's advice when he returned to White's. Beginning the day after the review hearing through the end of July, K.B. engaged in a host of aggressive and inappropriate behaviors that led White's to request for K.B.'s immediate removal from its program on July 30. These behaviors included repeated verbal aggression, physically assaulting staff members and other children at the facility, destruction of facility property, watching pornography and showing pornography to other children, and possessing a vape pen and a shank made from a toothbrush.

[8] On July 31, 2019, the State filed a modification report, setting forth all of K.B.'s behavioral issues while at White's and requesting that his disposition be modified. On August 1, 2019, K.B. was removed from White's and placed in Southwestern Indiana Regional Youth Village ("Youth Village") until an August 14 modification hearing. During the short period that K.B. was at the Youth Village, he continued to display aggressive behavior. For example, he engaged in defiant behavior, intimidation, and destruction of property, such as "flipping the dayroom" and throwing a chair at a television. (Tr. Vol. 2 at 36).

[9] On August 14, 2019, the juvenile court held a modification hearing. K.B.'s mother was present at the hearing. K.B.'s mother informed the juvenile court that she had been awarded custody of K.B. when she divorced his father but

that an aunt currently had a guardianship over K.B. At the end of the hearing, the juvenile court modified the disposition order and awarded wardship of K.B. to the Department of Correction with placement at the juvenile facility. The juvenile court did not modify its order for the payment of costs or fees. K.B. now appeals.

# Decision

## 1. Modified Disposition

K.B. first argues that the juvenile court abused its discretion by modifying his disposition. Specifically, he contends that the juvenile court should have continued his placement at White's or should have considered another less restrictive placement instead of ordering his placement with the Department of Correction. We disagree.

The choice of the specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008). A juvenile disposition will not be reversed absent a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. *Id.* Thus, the juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles. *Id.*

[12]    INDIANA CODE § 31-37-18-6 provides:

> If consistent with the safety of the community and the best
> interest of the child, the juvenile court shall enter a dispositional
> decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most
>> appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best
>> interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the
> child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the
> child's parent, guardian, or custodian.

[13]    Under this statute, the juvenile court "is only required to consider the least
restrictive placement *if* that placement comports with the safety needs of the
community and the child's best interests." *J.B. v. State*, 849 N.E.2d 714, 717
(Ind. Ct. App. 2006) (citing I.C. § 31-37-18-6) (emphasis in original). "Thus,
the statute recognizes that in certain situations the best interest of the child is
better served by a more restrictive placement." *K.A. v. State*, 775 N.E.2d 382,
387 (Ind. Ct. App. 2002), *trans. denied*.

[14]    Here, this case presents such a situation where a more restrictive placement was
not an abuse of discretion. K.B., who has a history of juvenile delinquency,

was already given an opportunity to be in a less restrictive residential placement at White's, and he was unsuccessful in that placement. Indeed, his behavior while in that residential placement was so frequent and abhorrent that White's sought to have him immediately removed its facility. Moreover, after K.B.'s removal from White's, he continued his aggressive behavior while in the Youth Village. K.B.'s behavior showed a defiance and lack of respect for authority. Given the facts and circumstances of this case, we cannot say that the juvenile court abused its discretion by modifying its disposition order and ordering the placement of K.B. with the Department of Correction. *See, e.g.*, *K.A.*, 775 N.E.2d at 387 (concluding that there was no abuse of discretion by the juvenile court when it modified the juvenile's disposition to commitment to the Department of Correction after the juvenile had failed to reform her behavior at other placements); *M.R. v. State*, 605 N.E.2d 204, 208 (Ind. Ct. App. 1992) (explaining that "[t]here are times in juvenile proceedings when the best interest of the juvenile and society require commitment" to a juvenile facility).

### 2. Payment of Costs and Fees

[15] Additionally, K.B. challenges the juvenile court's imposition of costs and fees without inquiring into his or his parents' ability to pay.

[16] Pursuant to INDIANA CODE § 31-40-2-1(a), a juvenile court "may" order a delinquent child or the child's parent, guardian, or custodian to pay probation fees and an administrative fee; however, such fees are subject to INDIANA CODE

§ 31-40-1-3.[3]  Our Court recently addressed INDIANA CODE § 31-40-1-3,

sometimes referred to as the reimbursement statute, as follows:

> The reimbursement statute provides that the juvenile court
> "shall" order parents to pay for or reimburse the costs of services
> provided to the delinquent child "unless" the court finds that
> parents are unable to pay or that justice would not be served.
> I.C. § 31-40-1-3(c).  Thus, implicit in an order for parents to
> reimburse costs is that parents are able to pay and that such is in
> the interest of justice.  Hence, this court has held that the
> reimbursement statute requires the juvenile court to inquire into
> parents' ability to pay and what justice requires for any given set
> of circumstances before it can order parents to pay or reimburse
> costs.

---

[3] INDIANA CODE § 31-40-1-3 provides, in relevant part:

(a) A parent or guardian of the estate of:

(1) a child adjudicated a delinquent child . . .

is financially responsible . . . for any services provided by or through the department.

(b) Each person described in subsection (a) shall, before a hearing under subsection (c) concerning payment or reimbursement of costs, furnish the court and the department with an accurately completed and current child support obligation worksheet on the same form that is prescribed by the Indiana supreme court for child support orders.

(c) At:

(1) a detention hearing;

(2) a hearing that is held after the payment of costs by the department under section 2 of this chapter (or IC 31-6-4-18(b) before its repeal);

(3) the dispositional hearing; or

(4) any other hearing to consider modification of a dispositional decree;

the juvenile court shall order the child's parents or the guardian of the child's estate to pay for, or reimburse the department for the cost of services provided to the child or the parent or guardian unless the court makes a specific finding that the parent or guardian is unable to pay or that justice would not be served by ordering payment from the parent or guardian.

*E.M. v. State*, 128 N.E.3d 1, 7 (Ind. Ct. App. 2019) (citing of *Matter of C.K.*, 695 N.E.2d 601, 605 (Ind. Ct. App. 1998), *trans. denied*; *In re M.L.K.*, 751 N.E.2d 293, 298-99 (Ind. Ct. App. 2001)).

[17] Here, the juvenile court imposed costs and fees at the initial disposition hearing when K.B.'s parents or guardian were not present. K.B.'s stepmother was at that hearing, but the record before us does not reveal that the juvenile court made any inquiry to K.B. or Stepmother regarding an ability to pay. Additionally, at the disposition modification hearing, K.B.'s mother was present, but the juvenile court made no inquiry into her ability to pay.

[18] The State acknowledges that the juvenile court improperly ordered K.B. to pay costs and fees without inquiring as to his or his parents' ability to pay and that "the appropriate remedy would be to remand to the juvenile court to conduct an indigency hearing." (State's Br. 13).[4] Accordingly, we remand this case to the juvenile court to conduct an indigency hearing. *See, e.g.*, *E.M.*, 128 N.E.3d at 2 (reversing the imposition of costs and remanding for a hearing to consider statutory factors, including the parents' ability to pay and whether reimbursement served the interest of justice); *M.Q.M. v. State*, 840 N.E.2d 441, 449 (Ind. Ct. App. 2006) (remanding the case for the juvenile court to conduct

---

[4] We reject the State's initial argument that K.B. forfeited his right to appeal the imposition of fees and costs because he did not file a notice of appeal when the juvenile court entered its initial disposition order and because there are no extraordinary compelling reasons to allow him to raise the issue.

an indigency hearing); *A.E.B. v. State*, 756 N.E.2d 536, 544 (Ind. Ct. App. 2001) (remanding for indigency hearing to determine juvenile's ability to pay probation and public defender fees).

[19]     Affirmed in part, reversed in part, and remanded.


Bradford, C.J., and Baker, J., concur.