**v.**

**STATE of Indiana, Appellee–Petitioner.**

**No. 49A02–0208–JV–660.**

Court of Appeals of Indiana.

May 7, 2003.

**510**

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

**1.** Ind.Code § 35–42–4–3 (1998 & Supp.2002).

Steve Carter, Attorney General of Indiana, Andrew A. Kobe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MATHIAS, Judge.

M.T. was found to be a delinquent child by the Marion Superior Court because he committed two counts of child molesting,[1] Class C felonies when committed by an adult. At the dispositional hearing, the trial court placed M.T. on formal probation and ordered him to not have any unsupervised contact with children under the age of twelve and to participate in the sexual offenders counseling program. The trial court also issued a parental participation order to M.T.'s mother. M.T. appeals raising three issues, which we restate as:

I. Whether the trial court abused its discretion when it admitted hearsay evidence from the victim's parents and a videotaped interview with the victim;

II. Whether the trial court improperly reviewed and relied upon a risk assessment tool; and,

III. Whether the trial court abused its discretion when it ordered a parental participation order.

Because we find that the trial court did not abuse its discretion when it admitted the hearsay statements, that it properly relied upon the risk assessment tool, but that it abused its discretion when it issued a parental participation order, we affirm in part and reverse in part.

**Facts and Procedural History**

On April 1, 2002, K.R. told her mother, Michelle Revadelo ("Michelle"), that M.T.

had touched her in her private area. Tr. p. 42. Two days later, K.R. spoke with a forensic child interviewer, and the interview was videotaped. During the interview, K.R. told the interviewer about two incidents of molestation. One of the incidents occurred at her house in the living room. K.R. said that M.T. put his hand inside of her panties and touched her inside of her private, which she identified as her vagina on a diagram. Ex. Vol., State's Ex. 2 pp. 16–17. Another incident occurred at M.T.'s house on his bunk bed. M.T. again touched K.R.'s private with his hand.

At the denial hearing, K.R. testified that M.T. had touched her private part under her clothing while at his house on the bunk bed. Tr. pp. 30–32. She also stated that he had touched her private part under her clothing in the living room at her house at a different time. Tr. pp. 32–33. At the hearing, K.R. said that the molestations began and occurred when she was four years old, but in the interview she stated that she was two years old the first time M.T. touched her and that he also touched her when she was three, four, and five years old. Tr. p. 34; Ex. Vol., State's Ex. 2 pp. 21–22.

M.T. moved to Indianapolis in June of 2000 to live with his mother. He is a cousin of K.R.'s mother. After January 2001, M.T. would often come over to K.R.'s house to spend time with her father. On February 17, 2002, Michelle and K.R.'s father separated, and K.R.'s father moved into M.T.'s house. K.R. would often go over to M.T.'s house to visit her father after he moved. M.T. would also occasionally babysit for K.R.

On April 10, 2002, M.T. was charged with two counts of child molesting, Class C

felonies when committed by an adult. A hearing on the admissibility of child hearsay and a denial hearing were held on July 11, 2002, with the testimony from the child hearsay hearing being incorporated into the denial hearing testimony. At the conclusion of the denial hearing, the charges of delinquency for committing child molesting were found true. A pre-dispositional report was made, which included the use of a risk assessment tool named ERASOR.[2] At the disposition hearing, the trial court placed M.T. on formal probation and ordered M.T. to have no contact with K.R., to have no unsupervised contact with any children under the age of twelve, and to participate in the sexual offenders counseling program. The trial court also issued a parental participation order. M.T. now appeals.

## I. Admission of Hearsay

The admission of evidence is within the sound discretion of the trial court, and the decision whether to admit evidence will not be reversed absent a showing of manifest abuse of discretion by the trial court resulting in the denial of a fair trial. *Prewitt v. State,* 761 N.E.2d 862, 869 (Ind.Ct.App.2002). A decision would be an abuse of discretion if it is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In reviewing the decision, we only consider the evidence in favor of the trial court's ruling and any unrefuted evidence in the defendant's favor. *Id.*

Special procedures have been created for introducing evidence that is "not otherwise admissible" in cases involving crimes against children under the age of fourteen and the mentally disabled. *See* Ind.Code § 35–37–4–6 (1998). Under Indiana Code

---

**2.** ERASOR stands for Estimate of Risk of Adolescent Sexual Offense Recidivism. It is "an empirically-guided approach to estimat-

ing the risk of a sexual reoffense for an adolescent ... who has previously committed a sexual assault." App. p. 47.

section 35–37–4–6, a statement or video-tape that is made by someone who at the time of trial fits into one of these categories, concerns an act that is a material element of the charged offense, and is not otherwise admissible becomes admissible if the court finds that the time, content, and circumstances of the statement or video-tape provide sufficient indications of reliability, and the "protected person" either testifies at the trial or is found to be unavailable. *Id.*

M.T. argues that the trial court abused its discretion when it admitted a statement that K.R. made to her mother and the videotaped interview of K.R and the forensic child interviewer. He claims that this is because the statements by K.R. were not sufficiently reliable. M.T. contends that Michelle had motivation to lie in order to get K.R.'s father to come home and to block any challenges for custody. Therefore, because Michelle was the first to hear K.R.'s statements, the statements were not sufficiently reliable.

"Considerations in making the reliability determination under [Indiana Code section 35–37–4–6] include the time and circumstances of the statement, whether there was significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age appropriate terminology, and spontaneity and repetition." *Pierce v. State*, 677 N.E.2d 39, 44 (Ind.1997) (citing *Idaho v. Wright*, 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Doubt may be cast on the reliability of the statement or videotape if it is preceded by lengthy or stressful interviews or examinations. *Id.* Corroboration should not be considered when determining the reliability of the statement because Indiana Code section 35–37–4–6 does not limit admission only to statements where there is independent corroborative evidence of the crime. *Id.*

In the present case, K.R.'s first statement about the molesting was to her mother, Michelle. Michelle was applying medicine for a rash on K.R.'s vaginal area and told K.R., "if someone touches you here you can tell me." Tr. p. 42. K.R. told Michelle that someone had and that it had been M.T. Michelle did not ask anything else at that point. This statement by K.R. that M.T. had touched her vagina was spontaneous. K.R. had no motive to fabricate the story. Her mother's statement did not assume or suggest that K.R. had been touched nor did it suggest the identity of anyone who may have touched her.

M.T. argues that Michelle had a motive to plant the story in K.R.'s head. However, M.T. had the opportunity to cross-examine Michelle about this possibility, and the trial court made a decision on the admissibility of the statement based on its assessment of the witnesses' credibility. *See id.* at 45. Under these facts and circumstances, the trial court did not abuse its discretion in admitting K.R.'s statement to her mother.

The videotaped interview occurred two days after K.R.'s initial statement to her mother. Only K.R. and the interviewer were present in the room during the interview; K.R.'s mother was not present to suggest any answers. The interviewer did not ask suggestive questions, and there was no indication that K.R. was coached. K.R. used age appropriate language when she described what had occurred and had no motive to fabricate the story.

M.T. claims that because there were some discrepancies in the time periods that K.R. stated that the molestations occurred, that her statement was not reliable. Although there were some discrepancies, the trial court made a judgment based on its assessment of the credibility of the witnesses and the substance of their testimony. *See id.* Once again, under

these facts and circumstances, we do not find that the trial court abused its discretion when it admitted the videotaped interview of K.R.

Our supreme court recently considered the issue of admissibility of child hearsay and sufficient indicia of reliability. *Carpenter v. State,* 786 N.E.2d 696 (Ind.2003). In that case, the court found that the child's statements, which consisted of statements to her mother, her grandfather, and a videotaped interview with Child Protective Services, did not exhibit sufficient indicia of reliability and therefore were not admissible. Id. at 704. There was no evidence of when the molestations occurred, and it was unclear if the statements were made soon after the molestations occurred. *Id.* at 703–704. The videotaped statement of the victim in *Carpenter* was made on the same day as the victim's initial statements to her mother, and the victim's statements to her grandfather occurred at least a full day after the initial statement. *Id.* at 698, 703–704. The court stated that the statements were not close enough in time to each other to prevent implantation or cleansing of the story by an adult. At the Child Hearsay Hearing, the child victim was found to be incompetent because she was unable to distinguish between the truth and a lie. *Id.* at 703–704. Because of a combination of these factors, our supreme court held that the statements of the victim did not have sufficient indicia of reliability. *Id.* at 704.

The present case is distinguishable from *Carpenter.* Although in our case it was also unclear when the molestations occurred and the videotaped interview occurred two days after the initial statement by K.R. to her mother, K.R. was found to be competent to testify at the hearing on the admissibility of the child hearsay. She testified as to her allegations against M.T. and was cross-examined by M.T.'s counsel.

After the trial court found that K.R.'s hearsay was admissible, K.R.'s testimony was incorporated as part of the denial hearing.

■ As a bench trial, this case is also distinguishable from *Carpenter,* a jury trial. "The assumption is that the trial court, as factfinder, correctly applies and follows the law." *Bordenkecher v. State,* 562 N.E.2d 49, 51 (Ind.Ct.App.1990), *trans. denied.* Here, we are confident that the presiding judicial officer correctly weighed K.R.'s hearsay. The trial court did not therefore abuse its discretion when it found that K.R.'s out of court statements contained sufficient indicia of reliability and were admissible.

## II. Reliability of Risk Assessment Tool

■ M.T. argues that the trial court improperly reviewed and relied upon the ERASOR, a risk assessment tool used by the probation department, because it was unreliable. He claims the results were unreliable because there was no evidence that the requirements of the ERASOR assessment tool were followed.

■ At the dispositional hearing, M.T. did not object to the pre-dispositional report or the use and reliance on the ERASOR assessment tool during the disposition hearing. In fact, his trial counsel stated, "I would ask that you rely on the predispositional report. Rely on the psych/sexual evaluation." Tr. p. 132. "Invited errors are not subject to appellate review, and a party therefore may not invite error, and then subsequently argue that the error requires reversal." *Oldham v. State,* 779 N.E.2d 1162, 1171 (Ind.Ct. App.2002), *trans. denied* (citing *Kingery v. State,* 659 N.E.2d 490, 495 (Ind.1995)). Therefore, M.T. invited any error that oc-

curred because of the review of and reliance on the ERASOR assessment tool.[3]

### III. Parental Participation Order

 Sentencing decisions are committed to the sound discretion of the trial court and will only be reversed on the showing of a manifest abuse of discretion. *Elisea v. State*, 777 N.E.2d 46, 51 (Ind.Ct. App.2002). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Sallee v. State*, 777 N.E.2d 1204, 1210 (Ind.Ct.App.2002), *trans. denied* (citing *Prewitt v. State*, 761 N.E.2d 862, 869 (Ind.Ct.App.2002)).

M.T. contends that the trial court abused its discretion when it issued a parental participation order as part of the disposition of his case because the statutory requirements for the issuance of a parental participation order were not followed. We agree.

This court has concluded that clear requirements must be met before a juvenile court may affirmatively order the participation of a parent in a disposition order. *A.E.B. v. State*, 756 N.E.2d 536, 542 (Ind. Ct.App.2001) (quoting *Mikel v. Elkhart County Dep't of Pub. Welfare*, 622 N.E.2d 225, 229 (Ind.Ct.App.1993)). Indiana Code section 31–37–15–1 states:

> Any of the following may sign and file a petition for the juvenile court to require the participation of a parent, guardian, or custodian in a program of care, treatment, or rehabilitation for the child:
> (1) The prosecuting attorney.
> (2) The attorney for the county office of family and children.

(3) A probation officer.

(4) A caseworker.

(5) The department of correction.

(6) The guardian ad litem or court appointed special advocate.

Ind.Code § 31–37–15–1 (1998). This petition must be verified. Ind.Code § 31–37–15–2 (1998). Indiana Code section 31–37–15–3 provides the required form and substance of the petition:

> A petition seeking participation of a parent, guardian, or custodian must be entitled "In the Matter of the Participation of _____ the Parent, Guardian, or Custodian of _____". The petition must allege the following:
> (1) That the respondent is the child's parent, guardian, or custodian.
> (2) That the child has been adjudicated a delinquent child.
> (3) That the parent, guardian, or custodian should:
>> (A) obtain assistance in fulfilling obligations as a parent, guardian, or custodian;
>> (B) provide specified care, treatment, or supervision for the child;
>> (C) work with a person providing care, treatment, or rehabilitation for the child; or
>> (D) refrain from direct or indirect contact with the child.

Ind.Code § 31–37–15–3 (1998).

 The juvenile court holds a hearing on the verified petition for parental participation after it is filed. *A.E.B.*, 756 N.E.2d at 543. As to this hearing, Indiana Code section 31–37–15–4 provides:

---

**3.** Additionally, M.T. has not demonstrated any harm caused to him by the trial court's review and reliance on the ERASOR assessment tool. At the disposition hearing, the State requested that M.T. be detained in boys' school, and M.T. requested that he receive only formal probation. Tr. pp. 129–30, 132. The trial court followed M.T's request and placed him on formal probation. Therefore, any error that occurred is harmless. *See* Ind. Appellate Rule 66(A).

(a) The court may hold a hearing on a petition concurrently with any dispositional hearing or with any hearing to modify a dispositional decree.

(b) If the order concerns participation of a parent, the juvenile court shall advise the parent that failure to participate as required by an order issued under IC 31–37–19–24 (or IC 31–6–4–15.8 before its repeal) can lead to the termination of the parent-child relationship under IC 31–35.

(c) If the court finds that the allegations under section 3 of this chapter are true, the court shall enter a decree.

Ind.Code § 31–37–15–4 (1998). "[A]ll of these procedures must be followed before a juvenile court 'may mandate parental involvement subject to contempt of court.'" *A.E.B.*, 756 N.E.2d at 543 (quoting *Mikel*, 622 N.E.2d at 228). If a proper verified parental participation petition is not filed, a juvenile court does not have jurisdictional authority over a parent and cannot order parental participation. *Id.*

Here, the prosecutor included a request for a parental participation order in the charging information. Although this may have put M.T. and his mother on notice that the State would be pursuing a parental participation order, it did not follow the requirements of Indiana Code section 31–37–15–3. It did not contain the proper title. *See* Ind.Code § 31–37–15–3. It also did not allege that the child had been adjudicated a delinquent child; it would be impossible for the charging information to allege this information before the disposition. *See id.* Therefore, we conclude that a proper verified petition for parental participation was not filed in this case. Since one was not filed, the trial court did not have jurisdiction over M.T.'s mother and cannot order parental participation. *See A.E.B.*, 756 N.E.2d at 543.

The State argues that, because the trial court incorporated the information from the pre-dispositional report into its findings and because the probation department recommended that M.T.'s mother would have to be involved to make the sexual offender therapy effective, this satisfies the requirement that the trial court must accompany its dispositional decree with findings and conclusions about the need for participation by the parent in the plan of care for the child. Ind.Code § 31–37–18 9 (1998). Although this is true, the clear statutory requirements cannot be ignored.

M.T. also argues that his mother was not advised of her rights as to the effect of his adjudication. Under Indiana Code section 31–37–12–6:

The juvenile court shall inform the parent or guardian of the estate of the following if a child is adjudicated a delinquent child:

(1) The parent, guardian, or custodian of the child may be required to participate in a program of care, treatment, or rehabilitation for the child.

(2) The parent or guardian may be held financially responsible for services provided for the child or the parent or guardian.

(3) The parent, guardian, or custodian of the child may controvert:

(A) an allegation made at the dispositional or other hearing concerning the participation of the parent, guardian, or custodian; or

(B) an allegation concerning the financial responsibility of the parent, guardian, or custodian for services that would be provided.

Ind.Code § 31–37–12–6 (1998). It appears that M.T.'s mother was made aware of (1) and (2) via the "Court Advisement of Rights" that she signed on April 10, 2002, at the initial hearing. Appellant's App. pp.

21–22. However, the record does not reflect that his mother was made aware of her right under (3) above, to dispute allegations made concerning the participation of the parent and to dispute allegations concerning the financial responsibilities of the parent for services provided to the child.

The State contends that M.T. and his mother were informed of their rights by watching a television screen that contained the rights, but it also concedes that the record is silent as to what rights were enumerated on the screen. An advisement of rights form is contained in the record, which was signed by both M.T. and his mother, but it is not clear if these were the same rights that appeared on the television screen. Nowhere in this advisement of rights form or anywhere else in the record does there appear evidence that M.T.'s mother was made aware of her right to dispute any allegations concerning her participation in the plan of care for M.T. or her financial responsibility for services to be provided for M.T. Therefore, the trial court erred when it did not advise M.T.'s mother of her rights regarding the effect of his adjudication. For all of these reasons, the parental participation order should be set aside.

**Conclusion**

The trial court did not abuse its discretion when it admitted the out of court statements of K.R., and it was not reversible error for the trial court to consider the results of the ERASOR assessment tool. However, the trial court did abuse its discretion when it issued a parental participation order.

Affirmed in part and reversed in part.

KIRSCH, J., and MATTINGLY–MAY, J., concur.