Lawrence **TAYLOR**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0503–CR–142.

Court of Appeals of Indiana.

Feb. 3, 2006.

Transfer Denied April 19, 2006.

Eric K. Koselke, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MATHIAS, Judge.

Lawrence Taylor ("Taylor") was convicted by a jury in Marion Superior Court of

Class A felony child molesting[1] and Class C felony child molesting.[2] The trial court sentenced him to concurrent terms of fifty and eight years, respectively. Taylor appeals, raising the following issues:

I. Whether the trial court improperly admitted child hearsay statements; and,

II. Whether sufficient evidence supports his conviction for Class A felony child molesting.

Concluding that the trial court did not abuse its discretion and that sufficient evidence supports Taylor's conviction, we affirm.

### Facts and Procedural History

From June through early September 2003, five-year-old T.J. and her two siblings were cared for by Taylor's mother while T.J.'s mother, Felicia Jones ("Mother"), was at work. Taylor was dating T.J.'s grandmother during this period, and spent significant amounts of time at his mother's home.

When T.J. started school in September 2003, she did not want to go Taylor's mother's house. Tr. p. 40. Mother noticed that T.J. was experiencing mood swings and did not want to hear Taylor's name. *Id.* In early November 2003, Mother noticed more changes in T.J.'s behavior. Specifically, T.J. "started feeling between her legs" and "saying ooh, ah." Tr. p. 41. T.J. also had complained of a burning sensation in her vagina. Tr. p. 69. Mother had also noticed T.J. using terms for genitalia that Mother had not taught her. Tr. pp. 59–60. On November 6, 2003, Mother questioned T.J. about her behavior, and T.J. "just came out and told" her that Taylor "was feeling on her from between her legs" and "[Taylor] made me suck his balls." Tr. pp. 43–44. She also told Moth-er that this had happened while she was at Taylor's mother's house. Tr. pp. 60–61.

Mother immediately sought medical attention for T.J. and spoke to police. On November 10, 2003, T.J. was interviewed at the Child Advocacy Center by Jamie Wilkinson ("Wilkinson"), a trained forensic child interviewer. During the videotaped interview, T.J. told Wilkinson that "[Taylor]'s got balls" and "he was feeling on me." Ex. Vol., State's Ex. 1. T.J. also told Wilkinson that Taylor touched her buttocks and her vagina, which she referred to as her "fat tail." Tr. pp. 85–86; Ex. Vol., State's Ex. 1. T.J. said that "he put his balls in my fat tail all the way" and that it "just hurted." Tr. pp. 95–96; Ex. Vol., State's Ex. 1. She also told Wilkinson that "his nose made me suck his balls." Tr. p. 96; Ex., Vol., State's Ex. 1.

Two days later, police interviewed Taylor. He denied any sexual contact with T.J., but later admitted that he had touched T.J.'s bare buttocks, and that while examining a scar on her thigh, his fingers might have touched her vagina. Tr. pp. 133–34. Taylor also said that T.J. had "flash[ed] him because she wanted him to touch her vagina and to see it." Tr. p. 148.

On November 13, 2003, the State charged Taylor with two counts of Class A felony child molesting and one count of Class C felony child molesting. Prior to trial, the State filed a notice of intent to present T.J.'s statements to her mother and to Wilkinson pursuant to Indiana Code section 35–37–4–6. The trial court conducted a child hearsay hearing on September 10, 2004, at which T.J., Mother, and Wilkinson testified and were subject to cross-examination. The trial court determined that T.J. was competent to testify

---

**1.** Ind.Code § 35–42–4–3(a) (2004).

**2.** Ind.Code § 35–42–4–3(b) (2004).

and that T.J.'s hearsay statements to Mother and to Wilkinson were sufficiently reliable and therefore admissible at trial. Appellee's App. pp. 1–4.

A jury trial commenced on January 20, 2005. Over Taylor's objection, Mother testified about what T.J. had told her. In addition, the court admitted the videotape of Wilkinson's interview with T.J. over objection. The jury convicted Taylor of one count of Class A felony child molesting and Class C felony child molesting, but acquitted him on the second count of Class A felony child molesting. The trial court conducted a sentencing hearing on February 18, 2005, and sentenced Taylor to fifty years on the Class A felony conviction and eight years on the Class C felony conviction and ordered the sentences be served concurrently. Taylor now appeals.

## I. Statements Admitted Under the Protected Person Statute [3]

■ "[T]he decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal." *Carpenter v. State*, 786 N.E.2d 696, 702 (Ind.2003). An abuse of

discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or it misinterprets the law. *Id.* at 703. However, as the court in *Carpenter* emphasized: "At the same time, the protected person statute impinges upon the ordinary evidentiary regime such that we believe a trial court's responsibilities thereunder carry with them what we recently called in another context 'a special level of judicial responsibility.'" *Id.* (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind.1997)).

Indiana Code section 35–37–4–6 provides, in relevant part, that an otherwise inadmissible statement or videotape made by a protected person (a child under fourteen years of age or a mentally disabled individual) is admissible in criminal actions involving sex crimes defined in Indiana Code chapter 35–42–4 if the following conditions are met:

(1) the court must find, in a hearing attended by the protected person and outside the presence of the jury, that the

---

**3.** In a single sentence in his brief, Taylor argues that the trial court violated his Sixth Amendment right to confrontation when it admitted T.J.'s statements into evidence. In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme Court held, "[w]here testimonial [hearsay] evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 124 S.Ct. 1354. In reaching this conclusion, the Court rejected a line of cases that permitted courts to admit hearsay evidence pursuant to evidentiary rules based solely upon a trial court's assessment of the reliability of the statement. *Marsh v. State*, 818 N.E.2d 143, 146 (Ind.Ct.App.2004).

However, *Crawford* also held that "when the declarant appears for cross-examination at trial, the *Confrontation Clause* places no constraints at all on the use of his [or her] prior testimonial statements." *Crawford*, 541

U.S. at 59 n. 9, 124 S.Ct. 1354 (citing *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (emphasis in original)). "The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.; see also Clark v. State*, 808 N.E.2d 1183, 1189 n. 2 (Ind.2004). In this case, T.J. testified at trial and was subject to cross-examination. Accordingly, Taylor was not denied his right of confrontation under *Crawford* when the trial court admitted T.J.'s statements to Wilkinson and the videotaped statements at trial. Moreover, T.J.'s statements to Mother were not testimonial in nature and therefore Indiana evidence law, in this case the protected person statute, governs their admissibility, not the Confrontation Clause principles at issue in *Crawford. See Anderson v. State*, 833 N.E.2d 119, 123–24 (Ind.Ct.App.2005); *Purvis v. State*, 829 N.E.2d 572, 579 (Ind.Ct.App.2005), *trans. denied.*

time, content, and circumstances of the statement or videotape provide sufficient indications of reliability;

(2) the protected person must either testify at the trial or be found unavailable as a witness;

(3) if the protected person is found to be unavailable as a witness, the protected person must be available for cross-examination at the hearing or when the statement or videotape is made; and

(4) the defendant must be notified at least ten days before trial of the prosecuting attorney's intention to introduce the statement or videotape and of the contents of the statement or videotape. Ind.Code § 35–37–4–6(a)–(g) (2004 & Supp.2005). In addition, the statute provides for jury instructions and permits a defendant to introduce a transcript or videotape of the hearing into evidence at trial. Ind.Code § 35–37–4–6(h)–(i).

■ " 'Considerations in making the reliability determination under [Indiana Code section 35–37–4–6] include the time and circumstances of the statement, whether there was significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age appropriate terminology, and spontaneity and repetition.' " *M.T. v. State,* 787 N.E.2d 509, 512 (Ind.Ct.App. 2003) (quoting *Pierce v. State,* 677 N.E.2d 39, 44 (Ind.1997) (citing *Idaho v. Wright,* 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)) (alteration in original)). Doubt may be cast on the reliability of the statement or videotape if it is preceded by lengthy or stressful interviews or examinations. *Id.*

### A. *T.J.'s Statements to Mother*

Citing our supreme court's decisions in *Pierce* and *Carpenter,* Taylor contends that the trial court abused its discretion when it concluded that T.J.'s statements to

Mother satisfied the statutory requirements of reliability. Specifically, he argues that (1) it was not clear at the child hearsay hearing whether T.J. could distinguish between the truth and a lie, (2) the statements T.J. made to Mother were not made close in time to the alleged molestations, (3) the statements themselves were not close in time to prevent manipulating, and (4) Mother had a motive to fabricate the statements. Br. of Appellant at 10.

In *Pierce,* our supreme court affirmed the trial court's reliability determination regarding statements the child had made to her mother and police officers. The court found it significant that the child's statements "were spontaneous and occurred 'a very short time' after the alleged molestation occurred." 677 N.E.2d at 45. The court also found it significant that the mother was "available for cross-examination at the [child hearsay] hearing as to the potential for any implantation or cleansing of [the child's] story." *Id.* The supreme court found no abuse of discretion, concluding that the "trial court made a judgment call based on its overall assessment of witness credibility and the substance of the mother's and the officers' testimony." *Id.*

In contrast, the *Carpenter* court reversed the trial court's determination that a child's statements had sufficient indications of reliability under the statute. The court concluded that the child's hearsay statements should not be deemed reliable because the record offered no indication that the child's statements were made close in time to the alleged molestations, because there was no evidence at all as to when the alleged molestation occurred, and because statements made to the child's grandfather occurred at least a full day after the child's statements to her mother and her videotaped interview. 786 N.E.2d at 704. In addition, the court considered

the fact that the child was not competent to testify at trial, explaining:

> [w]hile it is certainly true that the protected person statute provides that a statement or videotape made by a child incapable of understanding the nature and obligation of an oath is nevertheless admissible if the statute's requirements are met, there is a degree of logical inconsistency in deeming reliable the statements of a person who cannot distinguish truth from falsehood.

*Id.*

■ We find the facts before us distinguishable from *Carpenter*. Although it is unclear exactly when the molestations occurred, and T.J.'s statements to Mother and the videotaped interview did not occur until at least a few weeks later, T.J. was found to be competent to testify at the child hearsay hearing. Specifically, the trial court found that "although quite shy, [T.J.] is able to distinguish between commendable behavior, such as telling the truth, and impermissible behavior, such as lying." Appellee's App. p. 1. As such, T.J. testified and was subject to cross-examination at both the child hearsay hearing and again at trial.

Nevertheless, Taylor argues that the length of time between T.J.'s last contact with Taylor and the time she told Mother of the alleged molestation renders her statements unreliable. We acknowledge the concern expressed in *Pierce* that the "passage of time tends to diminish spontaneity and increase the likelihood of suggestion." 677 N.E.2d at 45. However, as the *Pierce* court also pointed out, in addition to the several enumerated considerations discussed there, "[t]here are undoubtedly many other factors in individual cases [to be considered]." *Id.* at 44.

T.J. had just turned five in August 2003 and had not yet entered kindergarten. Tr. pp. 47, 52. T.J. first displayed mood swings and then began "acting out," prompting Mother to directly question her about her behavior. Once questioned by Mother about her behavior, T.J. "just came out and told" her that Taylor "was feeling on her from between her legs" and that "[Taylor] made [her] suck his balls." Tr. pp. 43–44. Thus, T.J.'s statements to her Mother were spontaneous. *See M.T.*, 787 N.E.2d at 512. We also note that T.J. used age-appropriate language to describe the alleged incident, and T.J. had no discernible motivation to lie. *See Trujillo v. State*, 806 N.E.2d 317, 327 (Ind.Ct.App. 2004).

Next, Taylor argues that Mother had motivation to fabricate the story because Taylor and T.J.'s grandmother had recently ended a romantic relationship. However, Mother was available for cross-examination at the child hearsay hearing regarding the possibility that she planted or coached T.J.'s story. *See Pierce*, 677 N.E.2d at 45. Mother testified that she was not mad at Taylor before she spoke with T.J. and that she had no reason to make up allegations about him. Tr. p. 282. The trial court specifically noted in its findings that "no reason for fabrication was even discussed or inquired about" by Taylor at the child hearsay hearing. Appellee's App. p. 2.

Under these facts and circumstances, we conclude that the trial court did not abuse its discretion when it determined that T.J.'s statements to Mother provide sufficient indications of reliability and are therefore admissible under Indiana Code section 35–37–4–6.

### B. *T.J.'s Statements to Interviewer*

■ Taylor contends that the trial court abused its discretion when it determined that T.J.'s statements to Wilkinson were admissible under the protected person statute. Wilkinson interviewed T.J. on November 10, 2003, four days after she

told her Mother about the alleged molestations. The interview lasted roughly twenty minutes, during which Wilkinson interviewed T.J. outside the presence of Mother and did not ask her leading questions. *See Trujillo,* 806 N.E.2d at 328. Finally, we note that T.J.'s physical examination at Riley Hospital was not performed until after the interview. *See Carpenter,* 786 N.E.2d at 703; *Pierce,* 677 N.E.2d at 45 (expressing concern about statements made after the "potentially disorienting physical examination at a doctor's office"). Under these facts and circumstances, the trial court did not abuse its discretion in admitting T.J.'s hearsay statements to Wilkinson pursuant to Indiana Code section 35–37–4–6.

### C. *Videotape of Interview*

■ Next, Taylor argues that the trial court abused its discretion when it determined that T.J.'s videotaped interview with Wilkinson is admissible under Indiana Code section 35–37–4–6. The State asserts that Taylor has waived appellate review of the admissibility of the videotape. We agree. The record indicates that Taylor objected at trial to the admission of the videotaped interview on the basis of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). However, Taylor did not object to the videotape on the basis that the videotape violated Indiana Code section 35–37–4–6. "It is well-settled law in Indiana that a defendant may not argue one ground for objection at trial and then raise new grounds on appeal." *D.G.B. v. State,* 833 N.E.2d 519, 525 (Ind.Ct.App.2005) (quoting *Burnett v. State,* 815 N.E.2d 201, 207 (Ind.Ct.App. 2004)). *See also Jones v. State,* 800 N.E.2d 624, 629 (Ind.Ct.App.2003). Thus, Taylor has waived appellate review of this issue.

■ Waiver notwithstanding, the admission of a videotape may be harmless error if it is no more than cumulative of the statements of a witness and the tape is not the only direct evidence of the events. *Fox v. State,* 717 N.E.2d 957, 966 (Ind.Ct.App. 1999), *trans. denied* (citing *Pierce,* 677 N.E.2d at 45). Mother, Wilkinson, and T.J. testified about the same allegations made in the videotape, thus the evidence contained in the tape was cumulative of other evidence properly admitted, and any error in its admission would be harmless. *See Willis v. State,* 776 N.E.2d 965, 967 (Ind.Ct.App.2002).

### II. Sufficiency of the Evidence

■ Taylor argues that the evidence is insufficient to sustain his conviction of Class A felony child molesting. Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Cox v. State,* 774 N.E.2d 1025, 1029 (Ind. Ct.App.2002). We only consider the evidence most favorable to the judgment and the reasonable inferences that can be drawn therefrom. *Id.* Where there is substantial evidence of probative value to support the judgment, it will not be disturbed. *Armour v. State,* 762 N.E.2d 208, 215 (Ind. Ct.App.2002), *trans. denied.* The conviction will be affirmed unless we conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Norris v. State,* 755 N.E.2d 190, 192 (Ind.Ct.App.2001), *trans. denied* (citing *Davis v. State,* 658 N.E.2d 896, 897 (Ind.1995)).

Child molesting as a Class A felony is defined by Indiana Code section 35–42–4–3(a)(1) as:

A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class B felony. However, the offense is a Class A felony if: (1) it is committed by a person at least twenty-one (21) years of age.

Ind.Code § 35–42–4–3(a)(1) (2004). Taylor challenges his conviction of Count I, which alleged he committed child molesting by deviate sexual conduct. Accordingly, the State was required to prove that Taylor (1) performed or submitted to (2) deviate sexual conduct (3) with a child under the age of fourteen. Ind.Code § 35–42–4–3(a). Deviate sexual conduct is defined as "an act involving: (1) a sex organ of one person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." Ind.Code § 35–41–1–9 (2004).

Essentially, Taylor argues that because T.J. did not repeat to the jury her previous statement that Taylor "made me suck his balls" during her testimony at trial, the evidence presented is not sufficient to sustain his conviction. However, the jury was presented with properly admitted testimony from Mother and Wilkinson that T.J. told them that Taylor made her "suck his balls." Tr. pp. 44, 96. T.J. also told Wilkinson during her interview that "pee came out" and it tasted "nasty." Ex. Vol., State's Ex. 1. It is the prerogative of the jury to judge the credibility of witnesses. From the evidence presented, a jury could reasonably infer that Taylor placed his sex organ in T.J.'s mouth.

### Conclusion

The trial court did not abuse its discretion when it admitted T.J.'s hearsay statements under Indiana Code section 35–37–4–6 and sufficient evidence supports Taylor's conviction of Class A felony child molesting.

Affirmed.

BAKER, J., and RILEY, J., concur.