v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0807–JV–612.

Court of Appeals of Indiana.

April 7, 2009.

Transfer Denied June 16, 2009.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ian McLean, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

The Marion Superior Court found J.A. to be a delinquent child for committing two acts of child molesting which, if committed by an adult, would be Class B and Class C felonies. The trial court subsequently denied J.A.'s motion for relief from judgment, which alleged ineffective assistance of trial counsel. J.A. now appeals and argues that the trial court erred in concluding that he was not denied the effective assistance of trial counsel. We affirm.

### Facts and Procedural History

In 2004, J.A., who was born in June 1991, molested his then seven-year-old half brother Je.A. On several different occasions, J.A. grabbed Je.A.'s penis and inserted his penis into Je.A.'s anus. J.A. threatened to beat up Je.A. if he told anyone what happened. Je.A.'s mother, who is not J.A.'s mother, thought that Je.A. was acting "weird" and asked him if anyone had been "messing" with him. Tr. p. 43. Je.A. told his mother that J.A. had grabbed his penis and that J.A. had placed his penis in Je.A.'s mouth, but did not tell her about the anal intercourse. Je.A.'s mother initially tried to discuss these incidents with J.A.'s mother, but when J.A.'s mother proved to be unwilling to do so, Je.A.'s mother reported J.A.'s behavior to Child Protective Services ("CPS"). Lucita Pope, a CPS investigator, conducted a videotaped interview of Je.A.

On April 4, 2005, the State filed a petition alleging that J.A. was a delinquent child for committing two acts of child molesting that would be felonies if committed

by an adult. J.A., represented by counsel, denied these allegations. On May 12, 2005, the State filed a notice of its intention to introduce into evidence at trial Je. A.'s out-of-court statement and requested that the trial court hold a "child hearsay" hearing to determine the admissibility of this statement. The State intended to introduce the statements Je.A. made to his mother and Ms. Pope.

At a hearing held on February 21, 2006, the parties first addressed the issue of the admissibility of Je.A.'s out-of-court statements. After questioning Je.A., the trial court found him competent to testify. Je.A. then testified as to what J.A. had done to him and was cross-examined by J.A.'s counsel. Je.A.'s mother then testified regarding what her son had told her, followed by Ms. Pope. The videotape of Ms. Pope's interview with Je.A. was also played. A.S., Je.A.'s brother, also testified. The State then asked the trial court to find that Je.A.'s out-of-court statements were admissible, and J.A.'s counsel argued that such should not be deemed admissible. The trial court found that there was no evidence of coaching, that Je.A. used age-appropriate language to describe what happened, and that, despite some minor inconsistencies, Je.A.'s out-of-court statements were reliable and admissible. Tr. pp. 96–98.

The State then moved to "incorporate the hearsay statements that were made before this Court, as well as the testimony of the individuals who testified during the child hearsay portion of this hearing, into the State's case in chief at this time." *Id.* at 98. J.A.'s counsel did not object but instead made a separate motion to incorporate the testimony already heard. *Id.* The State then rested its case. In his case-in-chief, J.A. presented the testimony of his sister, V.H. J.A. also testified on his own behalf, denying the allegations against him. The trial court ultimately found that the State had met its burden of proof with regard to both counts and entered true findings thereon. At a dispositional hearing held on April 11, 2006, the trial court placed J.A. on probation. The terms of this probation included sex offender counseling and having no contact with Je.A. unless approved by Je.A.'s therapist.

On May 5, 2006, J.A.'s trial counsel moved to withdraw his appearance and asked the trial court to appoint counsel to represent J.A. on appeal. The trial court appointed the Marion County Public Defender to represent J.A. on appeal. On November 14, 2006, J.A.'s appellate counsel filed a praecipe for the record of proceedings. On March 27, 2007, J.A. filed a verified motion for relief from judgment, claiming ineffective assistance of counsel. On April 16, 2007, before the State filed its response to J.A.'s motion for relief from judgment, the trial court discharged J.A. from further obligation under the dispositional decree and ordered the case closed. The State then filed its response to J.A.'s motion on April 27, 2007.

On June 8, 2007, the parties held a pre-hearing conference and stipulated that the transcripts of the fact-finding hearing and dispositional hearing were evidence in the case, and requested the trial court to take judicial notice of its file in the case. On September 11, 2007, J.A. waived any right to a hearing on his motion. On December 28, 2007, J.A. filed a notice of additional authority in support of his motion for relief from judgment, arguing for the first time that his trial counsel had been ineffective for moving to incorporate the testimony from the child hearsay hearing. The trial court denied J.A.'s motion for relief from judgment on July 1, 2008. J.A. filed his notice of appeal on July 9, 2008.

## Discussion and Decision

▮▮▮ J.A. argues that the trial court erred in denying his motion for relief from judgment wherein he claimed that he was denied the effective assistance of trial counsel. A juvenile may use a Trial Rule 60(B) motion for relief from judgment to challenge an adjudication of delinquency. *S.E. v. State*, 744 N.E.2d 536, 538–39 (Ind. Ct.App.2001) (citing *Perkins v. State*, 718 N.E.2d 790, 792 (Ind.Ct.App.1999)). A Trial Rule 60(B) motion cannot be used as a substitute for a direct appeal, nor can it be used to revive an expired attempt to appeal, but such a motion is an appropriate way for a juvenile to present a claim of ineffective assistance of counsel in a delinquency proceeding. *Id.* at 539 (citing *Perkins*, 718 N.E.2d at 792–93).[1]

▮▮▮ Indiana Trial Rule 60(B) (2008)[2] provides in relevant part:

On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(1) mistake, surprise, or excusable neglect;

(2) any ground for a motion to correct error, . . .

\* \* \*

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4).[3]

The decision to grant or deny a motion for relief from judgment is within the equitable discretion of the court, and appellate review of the grant or denial thereof is limited to whether the trial court abused this discretion. *S.E.*, 744 N.E.2d at 538.

▮▮▮ In reviewing a claim of ineffective assistance of counsel, we initially presume that counsel's representation was within the wide range of reasonable professional assistance. *S.E.*, 744 N.E.2d at 539. The defendant has the burden to rebut the presumption of competence with strong and convincing evidence. *Id.* In order to prevail on a claim of ineffective assistance of counsel, the defendant must prove both that counsel's representation was deficient and that this deficient performance so prejudiced the defendant as to deprive him or her of a fair proceeding. *Id.* Isolated poor strategy, inexperience, or bad tactics do not necessarily constitute ineffective assistance of counsel. *Id.*

1. As explained in *Perkins*, juveniles in delinquency proceedings, like defendants in criminal proceedings, have a Sixth Amendment right to the effective assistance of counsel. 718 N.E.2d at 793 (citing *Bridges v. State*, 260 Ind. 651, 653, 299 N.E.2d 616, 617 (1973)). In criminal matters, post-conviction proceedings are usually the preferred forum for adjudicating claims of ineffective assistance of counsel. *See Woods v. State*, 701 N.E.2d 1208, 1219 (Ind.1998). However, post-conviction procedures are not available to challenge a juvenile delinquency adjudication, which is civil in nature. *Perkins*, 718 N.E.2d at 793 (citing *Jordan v. State*, 512 N.E.2d 407, 410 (Ind.1987)). Thus, Trial Rule 60(B) is the appropriate means for challenging the effectiveness of counsel in a juvenile delinquency proceeding. *Id.* (citing *Jordan v. State*, 516

N.E.2d 1054, 1054–55 (Ind.1987) (Shepard, C.J., concurring in denial of petition for rehearing)).

2. Trial Rule 60 was amended effective January 1, 2009, but these amendments are not relevant here. Moreover, J.A. filed his motion, and the trial court ruled thereon, prior to the effective date of these amendments. We therefore cite to the prior version of Trial Rule 60.

3. As the State notes, J.A. does not specify which subsection of Trial Rule 60(B) entitles him to relief. The quoted subsections, however, appear to be the only portions of Trial Rule 60(B) which would be applicable to J.A.'s claims.

Counsel's conduct is assessed by the facts known at the time, not by later information or hindsight. *State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997).

 To establish prejudice, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. *S.E.*, 744 N.E.2d at 539. If it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, that course should be followed. *Woods*, 701 N.E.2d at 1224.

 In the present case, J.A. first claims that his trial counsel was ineffective for failing to file a notice of appeal. J.A. argues that the failure to file a notice of appeal constituted deficient performance. *See S.E.*, 744 N.E.2d at 539 (concluding that counsel's failure to file a timely appeal of juvenile delinquency adjudication constituted deficient performance because such was an obvious, serious mistake which could not be attributed to strategy or tactics and resulted in the forfeiture of the right to appeal). J.A.'s argument, however, presumes that J.A. or his parents instructed his counsel to appeal his juvenile delinquency adjudication. J.A. did not aver in his verified motion for relief from judgment that he or his parents did instruct his counsel to appeal. It could very well be that J.A. and his parents were not unhappy with the outcome of his juvenile delinquency proceeding—probation and sex offender counseling. We cannot say that the failure to timely appeal is *per se* deficient performance in every case. Regardless, even if we presume that J.A.'s counsel's performance was deficient, J.A.

must establish that he was prejudiced by counsel's errors.

 J.A. claims that, had his counsel timely initiated an appeal, he would have presented three successful arguments. The first of the arguments which J.A. claims should have been presented on direct appeal is that his trial counsel was ineffective. We are unable to see how J.A. was prejudiced by the failure to bring an ineffective assistance claim on direct appeal, because J.A. was able to present this claim in his motion for relief from judgment. Indeed, a motion for relief from judgment, not a direct appeal, is the more appropriate method of presenting claims of ineffective assistance of counsel. *Perkins*, 718 N.E.2d at 793 (motion for relief from judgment is the appropriate means for challenging the effectiveness of counsel in a juvenile delinquency proceeding); *cf. Woods*, 701 N.E.2d at 1219 (post-conviction proceedings are preferred forum for presenting claims of ineffective assistance of trial counsel).

 J.A. next claims that, had his trial counsel filed a direct appeal, he would have prevailed on his claim that the trial court abused its discretion when it determined that Je.A.'s out-of-court statements were reliable. Indiana Code section 35–37–4–6 (2004), also known as the "protected person statute" or the "child hearsay statute," provides a list of certain conditions under which evidence that would otherwise be inadmissible will be allowed in cases involving certain crimes against "protected persons." *L.H. v. State*, 878 N.E.2d 425, 428 (Ind.Ct.App.2007).[4]

4. Among the crimes to which the child hearsay statute is applicable are sex crimes under Indiana Code chapter 35–42–4, which includes child molesting under Indiana Code section 35–42–4–3 (2004). *See L.H.*, 878 N.E.2d at 428 n. 1 (citing I.C. § 35–37–4–

6(a)(1)). A "protected person" is defined to include "a child who is less than fourteen (14) years of age." I.C. § 35–37–4–6(c)(1). J.A. makes no argument that Je.A. was not a protected person or that child molesting is not a

The child hearsay statute provides that a statement or videotape that: (1) is made by a person who at the time of trial is a protected person; (2) concerns an act that is a material element of an offense listed in subsection (a) or (b), which includes sex crimes, and thus child molesting, that was allegedly committed against the person; and (3) is not otherwise admissible into evidence, is admissible into evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met. I.C. § 35–37–4–6(d).[5]

Subsection (e) of the child hearsay statute is at the heart of J.A.'s current claims. This subsection provides that:

A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person; that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial. . . .

I.C. § 35–37–4–6(e). Factors to be considered in the reliability determination include the time and circumstances of the statement, whether there was a significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age-appropriate terminology, spontaneity, and repetition. *L.H.*, 878 N.E.2d at 428 (citing *Taylor v. State*, 841 N.E.2d 631, 635 (Ind.Ct.App.2006)).

Here, it appears that all of the procedural conditions of this subsection were met. J.A. claims, however, that the trial court abused its discretion in concluding that the time, content, and circumstances of Je.A.'s out-of-court statements provided sufficient indications of reliability.

Specifically, J.A. claims that Je.A.'s claims of sexual molestation were made only after an "ongoing inquiry" by his mother lasting three to four weeks in which there was an opportunity for "fabrication and coaching." Appellant's Br. p. 11. However, as noted by the trial court in its denial of J.A.'s motion for relief from judgment, the testimony cited by J.A. in support of this argument does not support his characterization of what occurred. Je.A.'s mother thought Je.A. was acting "weird," so she asked if anyone had been "messing" with him. Tr. p. 43. Je.A. then told his mother that J.A. had grabbed Je.A.'s penis and that J.A. had placed his penis in Je.A.'s mouth. Any delay in reporting these incidents was the result of Je.A.'s mother trying to speak with J.A.'s mother to avoid family strife. When it appeared that J.A.'s mother thought that Je.A. was lying, Je.A.'s mother contacted CPS. The trial court found "no motive for [Je.A.] to fabricate the allegations, revelation of which to his mother and then others had to be deeply embarrassing and personally invasive, especially for a 9 year old boy who was 7 years old when the acts at issue occurred." Appellant's App. p. 18. Further, Je.A.'s mother testified that she

crime to which the child hearsay statute is applicable.

**5.** The child hearsay statute applies to juvenile delinquency proceedings. *See L.H.*, 878 N.E.2d at 428; *D.G.B. v. State*, 833 N.E.2d 519, 524–25 (Ind.Ct.App.2005); *J.V. v. State*, 766 N.E.2d 412, 415 (Ind.Ct.App.2002), *trans. denied.*

did not coach her son, and no contrary evidence was offered. *Id.*

J.A. emphasizes that when Je.A. testified in court, he used different terms to describe sexual organs than he did when he first told his mother and when he spoke with Ms. Pope. This, J.A. claims, is further evidence of fabrication or coaching. As found by the trial court, however, "such an assertion ignores that charges were filed on May 9, 2005, but the child hearsay hearing and denial hearing were not held until February 21, 2006. During this time [Je.A.] aged almost a year and advanced a grade in school, [and][i]t is reasonable and logical that his vocabulary would progress in that time." Appellant's App. p. 19. Moreover, although Je.A. may have used slightly different terms, his language was always age appropriate.

J.A. further claims that Je.A.'s statement is unreliable because Je.A.'s mother testified that Je.A. said that J.A. had placed his penis in Je.A.'s mouth, but that Je.A. never repeated this to Ms. Pope or during his testimony. As explained by the trial court, the fact that a young child did not fully recount every detail of his abuse to both his mother and Ms. Pope is not an indication that Je.A. was lying. J.A. further notes that although Je.A. testified that his brother, A.S., was in the room when the molestation occurred, but A.S. testified that he did not witness any molestation. As noted by the trial court, this ignores the fact that Je.A. testified that his brother was asleep at the time.

J.A. also claims that "common sense" undercuts the reliability of Je.A.'s statements because the State alleged that he penetrated Je.A.'s anus with his penis, whereas Je.A. testified that J.A.'s penis was "soft" when this occurred. As noted by the State, this argument ignores Je.A.'s testimony that he could feel J.A.'s penis inside him and that this hurt. The trial court found that a child of Je.A.'s age was "unlikely to understand the import" of what J.A.'s counsel meant when he questioned him about whether J.A.'s penis was "soft." Appellant's App. p. 19. Indeed, by saying something was "soft," Je.A. could have meant that the surface was not rough, not that something was not stiff or rigid. *Id.* We agree with the State that "[i]t is an exercise in common sense … that when a nine year old child says that something is 'soft,' the child does not invariably mean to say that something is 'limp,' 'flaccid,' or impotent." Appellee's Br. p. 15. Therefore, Je.A.'s testimony that J.A.'s penis was "soft" does not render his statements unreliable or contrary to common sense.

Given the broad discretion afforded to trial courts in questions of the admission of evidence, and given the facts and circumstances of the present case, we cannot say that the trial court erred in concluding that Je.A.'s out-of-court statements bore sufficient indications of reliability. Even if J.A. had timely appealed the admissibility of these statements, he would not have been successful. J.A.'s claim of ineffective assistance of trial counsel based upon this failure therefore fails.

██ J.A. next claims that his trial counsel was ineffective because he not only failed to object to the State's request that the evidence from the child hearsay hearing be incorporated into the fact-finding hearing, he affirmatively requested that this evidence be incorporated. In support of this argument, J.A. relies on the holding in *L.H.* In that case, the trial court incorporated evidence from the child hearsay hearing into the fact-finding hearing over the juvenile's objection. 878 N.E.2d at 430. The majority held that the juvenile was entitled to a separate fact-finding hearing at which all the safeguards and evidentiary rules were followed, and that

the trial court erred in incorporating the evidence from the preliminary child hearsay hearing. *Id.* at 430. Judge Kirsch dissented, concluding that, absent a showing of sufficient prejudice, the trial court acted within its discretion in incorporating the evidence from the child hearsay hearing. *Id.* at 431 (Kirsch, J., dissenting).[6]

J.A. now claims that because his trial counsel did not object to, and in fact affirmatively requested, the incorporation of the evidence from the child hearsay hearing into the fact-finding hearing, he was denied the effective assistance of trial counsel. We disagree.

First, we disagree with J.A. that his trial counsel's actions constituted deficient performance. The child hearsay hearing and fact-finding hearing in J.A.'s case were held on February 21, 2006. The opinion in *L.H.* was not issued until December 27, 2007—almost two years later. It appears that before the L.H. opinion, the practice of incorporating evidence from a child hearsay hearing into the fact-finding hearing was not uncommon. *See, e.g., M.T. v. State,* 787 N.E.2d 509, 511 (Ind.Ct.App. 2003) (noting without comment that testimony from child hearsay hearing was incorporated into the fact-finding hearing); *Casselman v. State,* 582 N.E.2d 432, 437 (Ind.Ct.App.1991) (rejecting defendant's argument that he was entitled to separate hearing on admissibility of evidence under child hearsay statute where trial court held hearing during bench trial).

J.A.'s trial counsel was therefore not ineffective for failing to anticipate the holding in *L.H.*[7] *See Overstreet v. State,* 877 N.E.2d 144, 161–62 (Ind.2007); *Harrison v. State,* 707 N.E.2d 767, 776 (Ind. 1999) (holding that counsel will not be deemed ineffective for failing to anticipate or effectuate a change in the existing law). Furthermore, since the child hearsay hearing had concluded only minutes earlier, J.A.'s trial counsel could have made a strategic decision not to re-call the same witnesses who just testified and have the trial court hear yet again the testimony that he molested his half brother. In short, J.A. has failed to establish that his trial counsel's performance fell below an objective standard of reasonableness.

■ With regard to J.A.'s argument that the incorporation of the evidence from the child hearsay hearing deprived him fundamental due process, we again disagree. First, we note that J.A. did not present this argument to the trial court. It is therefore waived. *See Morgan v. State,* 755 N.E.2d 1070, 1077 (Ind.2001) (where defendant's argument on appeal was different than his argument to the trial court, his argument was waived).

■ Waiver notwithstanding, the record does not support J.A.'s claim that he was denied due process. J.A. was given notice of the child hearsay hearing and appeared both in person and by counsel at the hearing. J.A.'s trial counsel cross-examined the witnesses who testified at the hearing and made relevant objections. Indeed, it appears that all parties proceeded with the understanding that the relevant rules of evidence applied to the hearing. Under these facts and circumstances we cannot say that J.A. was denied funda-

---

**6.** Judge Kirsch noted that calling the State's witness for a second time to repeat what she had said only minutes earlier "elevate[d] form over substance." *Id.* He further noted that there was no indication that the rules of evidence were not followed in the child hearsay hearing. *Id.*

**7.** We agree with the State that "J.A.'s trial counsel [was] no more ineffective for failing to anticipate *L.H.* than his present counsel was ineffective for failing to anticipate and include it in J.A.'s original motion [for relief from judgment]." Appellee's Br. p. 13.

mental due process when the trial court incorporated the evidence from the child hearsay hearing into the fact-finding hearing. *Cf. In re J.Q.,* 836 N.E.2d 961, 965 (Ind.Ct.App.2005) (reversing CHINS determination where parent was not given adequate notice or opportunity to respond regarding admission of child hearsay statement and was not informed that child would be unavailable to testify until the day of trial); *Roark v. Roark,* 551 N.E.2d 865, 869 (Ind.Ct.App.1990) (holding that trial court erred in admission of children's hearsay statements based solely on the opinion of the *guardian ad litem* that it would be too traumatic for children to testify).

In conclusion, J.A. was not denied the effective assistance of trial counsel. Even if we assume that trial counsel was instructed to file an appeal, the failure to timely appeal did not prejudice J.A. because the issues he claims should have been presented on appeal were not meritorious. J.A.'s trial counsel was not ineffective for failing to anticipate the holding in *L.H.* Lastly, trial counsel's failure to object to the incorporation of the evidence from the child hearsay hearing did not deprive J.A. of fundamental due process.

Affirmed.

BAILEY, J., and BARNES, J., concur.